(No. 48545.—

JOHN E. SCHEDLER, Appellant, v. ROWLEY INTERSTATE TRANSPORTATION CO., INC., *et al.*— (Rowley Interstate Transportation Co., Appellee.)

*Opinion filed October 5, 1977.*

MORAN, J., took no part.
RYAN, J., dissenting.

Roszkowski, Paddock, McGreevy & Johnson, of Rockford (Daniel T. Williams, Jr., of counsel), for appellant.

W. J. Sturgeon, of Dixon, for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Pursuant to Supreme Court Rule 304(a) (58 Ill. 2d R.

304(a)) plaintiff, John E. Schedler, appealed from the judgment of the circuit court of Carroll County entered in favor of defendant Rowley Interstate Transportation Co., Inc., upon allowance of its motion for summary judgment. The appellate court affirmed (37 Ill. App. 3d 433), and we allowed plaintiff's petition for leave to appeal.

In this action plaintiff seeks to recover damages from defendant and Donald D. Dixon for personal injuries suffered in a collision between a tractor owned and driven by Dixon and an automobile driven by plaintiff. On the date of the occurrence the tractor was under lease to defendant, a motor carrier engaged in interstate commerce under a certificate issued by the Interstate Commerce Commission. Operating his tractor and pulling defendant's trailer, Dixon had transported a load of freight for defendant from Dubuque, Iowa, to New Haven, Connecticut. He had then transported a cargo for another carrier from Connecticut to Chicago and upon discharging that cargo had driven the tractor and empty trailer to his home in Savanna, Illinois. The following day he drove the tractor and trailer to Dubuque and dropped off the trailer at defendant's terminal. While he was driving the tractor to Savanna, the collision out of which this litigation arose occurred.

Although recognizing the applicability of the public franchise doctrine and the vicarious liability of the certificated carrier thereunder, the appellate court concluded that the "activity covered by the lease terminated when Dixon, the owner-driver of the leased tractor, returned the empty trailer to the Rowley terminal in Dubuque. *** At the time of the injury the owner-driver [Dixon] was using his tractor for transportation to his home—a mission of his own, for his own benefit, and in no way advancing or having any connection with the business of Rowley." 37 Ill. App. 3d 433, 438-39.

Approximately six months prior to the collision,

Dixon and defendant had entered into a lease agreement on the form prescribed by the Interstate Commerce Commission. The lease, *inter alia,* provided that "the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shippers, and the INTERSTATE COMMERCE COMMISSION. \*\*\* Lessee shall not be liable for the loss of, or damage to, the aforesaid equipment, however caused, while in use under the terms of this lease. Lessee agrees to sign the receipt for possession of the above described equipment and upon completion of the trip described above the Lessor will sign the receipt for the equipment as having been returned to his possession." "Possession to be surrendered upon termination by this company."

Plaintiff contends that the provisions of part II of the Interstate Commerce Act (49 U.S.C. sec. 301 *et seq.*) and the rules promulgated by the Interstate Commerce Commission "intended to place full responsibility to the public on the carrier," that the lease effected "an assumption of liability by Rowley and a waiver of defenses denying agency," and that the vicarious liability thus assumed is not governed by the common law doctrine of *respondeat superior.* It is defendant's position that "Under the 'Public Franchise Rule' a lessee is not responsible for the conduct of his lessor who is not engaged at the time of the occurrence in some activity in carrying on the business of the lessee in interstate commerce" and that the judgment should be affirmed.

Part II of the Interstate Commerce Act provides that the Interstate Commerce Commission may prescribe regulations "with respect to the use by motor carriers (under leases, contracts, or other arrangements) of motor vehicles not owned by them," and "such other regulations as may be reasonably necessary in order to assure that while

motor vehicles are being so used [under lease] the motor carriers will have *full direction and control of such vehicles* and will be fully responsible for the operation thereof \*\*\*." (Emphasis added.) (49 U.S.C. sec. 304(e).) Pursuant to this specific delegation the Interstate Commerce Commission promulgated rules and regulations ("Lease and Interchange of Vehicles," 49 C.F.R. sec. 1057 (1976)) which in pertinent part provide that a lease agreement must be made between the authorized carrier and the owner of the equipment, must be in writing (1057.4(a)(2)), and, with certain exceptions not relevant here, must be for a period of not less than 30 days (1057.4(a)(3)). "Owner" is defined as a person "(1) to whom title to equipment has been issued, or (2) who as lessee, has the right to exclusive use of equipment for a period longer than 30 days, or (3) who has lawful possession of equipment and has the same registered and licensed in any State or States or the District of Columbia in his or its name." (1057.2(f).) The rules, so far as relevant here, also require that the lease shall provide for "the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement." (1057.4(a)(4).) Section 1057.4(a)(6) provides that the lease "Shall specify the time and date or the circumstances on which the contract, lease, or other arrangement begins, and the time or the circumstances on which it ends. The duration of the contract, lease or other arrangement shall coincide with the time for the giving of receipts for the equipment as required by paragraph (b) of this section." Section 1057.4(b) provides: "When possession of the equipment is taken by the authorized carrier or its regular employee or agent duly authorized to act for it, said carrier, employee or agent shall give to the owner of the equipment, or the owner's employee or agent a receipt specifically identi-

fying the equipment and stating the date and the time of day possession thereof is taken; and when the possession by the authorized carrier ends; it or its employee or agent shall obtain from the owner of the equipment, or its regular employee or agent duly authorized to act for it, a receipt specifically identifying the equipment and stating therein the date and the time of day possession thereof is taken." The rules also provide for identification of the leased equipment as that of the carrier-lessee (1057.4(d)) and that "The authorized carrier operating equipment under this part shall remove any legend, showing it as the operating carrier, displayed on such equipment, and shall remove any removable device showing it as the operating carrier, before relinquishing possession of the equipment" (1057.4(d)(1)). In *American Trucking Association, Inc. v. United States,* 344 U.S. 298, 97 L. Ed. 337, 73 S. Ct. 307, in which the rules and regulations were held valid, the Supreme Court reviewed the abuses which the Act and accompanying regulations were designed to prevent, among which was the difficulty of "fixing financial responsibility for \*\*\* injuries to \*\*\* members of the public." *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.,* 423 U.S. 28, 37, 46 L. Ed. 2d 169, 177, 96 S. Ct. 229, 234.

The Supreme Court has not decided and the courts of appeals are not in agreement whether the liability of the carrier-lessee rests upon common law principles of *respondeat superior* (*Wilcox v. Transamerican Freight Lines, Inc.* (6th Cir. 1967), 371 F.2d 403) or liability is vicariously imposed regardless of the use being made of the vehicle at the time of the occurrence. (See *Simmons v. King* (5th Cir. 1973), 478 F.2d 857; *Mellon National Bank & Trust Co. v. Sophie Lines, Inc.* (3d Cir. 1961), 289 F.2d 473.) We are of the opinion that it was the purpose of the regulatory scheme that the carrier-lessee be vicariously responsible to the public for the negligent operation of the leased vehicle

without regard to whether at the time in question it was being used in the business of the lessee. (See *Cosmopolitan Mutual Insurance Co. v. White* (D. Del. 1972), 336 F. Supp. 92.) To hold otherwise would permit injecting into each case the issues of agency, scope of employment and purpose of the movement out of which the occurrence arose, thus defeating the declared purpose of the regulations to eliminate the problem of fixing responsibility for damages and injuries to members of the public. Absent proof of compliance with sections 1057.4(d) and 1057.4(d)(1), we hold that if Dixon is liable to plaintiff, defendant must be held vicariously liable.

In *Econo Lease, Inc. v. Noffsinger,* 63 Ill. 2d 390, 393, the court said: "A motion for summary judgment will be granted if the pleadings, depositions, admissions and affidavits on file reveal that there is no genuine issue as to any material fact and that the movant is entitled to a judgment or decree as a matter of law. (Ill. Rev. Stat. 1975, ch. 110, par. 57(3); *Carruthers v. B. C. Christopher & Co.,* 57 Ill. 2d 376.) A reviewing court must reverse an order granting summary judgment if it is determined that a material question of fact does exist." Upon application of this rule the judgments of the circuit and appellate courts are reversed and the cause is remanded to the circuit court of Carroll County for further proceedings.

*Reversed and remanded.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.

MR. JUSTICE RYAN, dissenting:

I cannot agree with the majority's pronouncement that a "carrier-lessee [is] vicariously responsible to the public for the negligent operation of the leased vehicle without regard to whether at the time in question it was being used in the business of the lessee." In my opinion,

this conclusion is not supported by the Interstate Commerce Act or the relevant Interstate Commerce Commission regulations.

The majority relies heavily upon 49 U.S.C. sec. 304(e)(2) to support its holding that a carrier-lessee's liability for negligence attaches without regard to whether at the time of a driver's negligent conduct the vehicle was being used in the lessee's business. That part of section 304(e)(2) relied on by the majority reads as follows:

> "[T]he Commission is authorized to prescribe \*\*\* (2) such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof \*\*\*."

However, it is significant to point out that the majority failed to note a qualifying phrase of that section of the Act, italicized below, which plainly limits and circumscribes the responsibility of the carrier insofar as the leased vehicle is concerned. The quotation with the omitted phrase is as follows:

> "[T]he Commission is authorized to prescribe \*\*\* (2) such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof \*\*\* *as if they were the owners of such vehicles* \*\*\*." (Emphasis added.) (49 U.S.C. sec. 304(e)(2).)

Clearly, the italicized phrase was intended to define the limits of the authority of the Interstate Commerce Commission to prescribe by regulation the extent of a carrier's liability. However, the import of the majority decision, which apparently imposes absolute responsibility upon the lessee for all damages occasioned by the operation of the vehicle during the term of a lease, is contrary to the intent manifested by the Act.

I do not dispute that traditional concepts of *respondeat superior* do not prevail in such cases or that the Act and regulations of the Commission have broadened the responsibility of a carrier-lessee. However, even under the theory of broadened and expanded responsibility there still must be found some nexus between the use of the vehicle at the time of the accident out of which the claim arose and the business of the carrier-lessee. An analysis of the cases discussed, and in my opinion misinterpreted, by the majority bears out this conclusion.

The majority relies on *Cosmopolitan Mutual Insurance Co. v. White* (D. Del. 1972), 336 F. Supp. 92, in support of its holding that a carrier-lessee's liability for negligent conduct of a driver attaches without regard to whether at the time in question the leased vehicle was being used in the business of the lessee. Quite frankly, I find the majority's reliance on *Cosmopolitan* difficult to understand, since in that case the court found that at the time in question the leased vehicle *was* being used *in furtherance of the defendant carrier's business*.

In *Cosmopolitan,* a driver of a truck owned by the lessor and leased to the defendant carrier was involved in an accident caused by his alleged negligent conduct. At the time of the accident, the driver was hauling a load for another carrier, since his services were not needed by the carrier-lessee. At the particular time in issue, the driver was en route to an overnight destination where he had planned to stay before picking up the load for the other carrier on the following morning. The court held, however, that the driver's actions "were certainly in [the carrier-lessee's] business." (336 F. Supp. 92, 99.) The court noted that the practice of hauling loads for other carriers was "an incidental function necessary to accomplish the primary purpose of *** [having] available [to the lessee] the requisite vehicular equipment to carry on its business." (336 F. Supp. 92, 99.) The finding by the court that the

driver was on the business of the carrier-lessee was an important one as regards the ultimate decision that it was responsible for the driver's negligence. Without such a finding by the majority today, its reliance on *Cosmopolitan* is questionable.

*Simmons v. King* (5th Cir. 1973), 478 F.2d 857, and *Mellon National Bank & Trust Co. v. Sophie Lines, Inc.* (3d Cir. 1961), 289 F.2d 473, both cited by the majority, were two cases which expanded the liability of carrier-lessees beyond that of the traditional limitations prescribed by *respondeat superior.* Once again, however, it is significant to point out that in both cases the respective courts found that the drivers were on the business of the carriers at the time of their alleged negligent conduct. In *Simmons* there was little question that the driver was on the lessee's business, since at the time of the negligent conduct the driver was hauling a load of sugar for the defendant carrier. In *Mellon* the Court of Appeals for the Third Circuit held that there was a conclusive presumption that the driver was on the defendant carrier's business when he was hauling lumber for another carrier. The court noted that the defendant had profited from the practice of hauling loads for other carriers where trucks had carried loads en route to pick up defendant's freight. Thus, while the court declined to apply the rigid concept of respondeat superior, it still found that the driver was on the business of the carrier under the broad language of the ICC leasing arrangement. However, there is nothing in that case, nor in *Simmons* for that matter, that supports the contention that an effectual leasing arrangement imposes liability upon the lessee regardless of whether at the time of a driver's negligent conduct the vehicle in question is being used in the business of the lessee.

In addition to the cases cited by the majority, my own research has found no case in which the court has applied an absolute-responsibility rule under the Act and regula-

tions. See, *e.g., Allstate Insurance Co. v. Liberty Mutual Insurance Co.* (3d Cir. 1966), 368 F.2d 121; *Felbrant v. Able* (1963), 80 N.J. Super. 587, 194 A.2d 491; *Duke v. Thomas* (Mo. App. 1961), 343 S.W.2d 656; and *Gackstetter v. Dart Transit Co.* (1964), 269 Minn. 146, 130 N.W.2d 326.

*Gackstetter v. Dart Transit Co.* is a case very similar to the one before us today. In *Gackstetter,* a driver was involved in an accident while driving a truck leased to a carrier-lessee under an ICC leasing arrangement. The Supreme Court of Minnesota, noting that at the time of the accident the driver was on a purely personal pursuit, found that the carrier-lessee could not be held liable even though the vehicle in question was being used with its permission. I think the reasoning of *Gackstetter* is persuasive.

The appellate court applied the public-franchise doctrine as expressed in Restatement (Second) of Torts section 428 (1965). In this court, both the appellant and the appellee raised arguments concerning its applicability. However, except for noting that the appellate court recognized the applicability of this doctrine, the majority makes no reference to it.

Section 428 of the Restatement provides:

"An individual or corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work *in carrying on the activity.*" (Emphasis added.)

It cannot be said that this public-franchise doctrine does not apply to motor carriers operating under Interstate Commerce Commission permits and subject to its regulations because the reporter's notes to section 428 in Restatement (Second) of Torts (Appendix) list more than

40 cases in both the Federal and State courts wherein the courts, in deciding motor carrier cases, have applied or considered the public-franchise doctrine as stated in the Restatement. It should be noted that the last phrase of section 428, which has been italicized as quoted above, limits the liability of the one carrying on the activity to negligent acts "in carrying on the activity" of the carrier. This does not necessarily mean the same as "in the course of his employment," but at least the conduct must have occurred while the one employed was performing some act in the furtherance of the carrier's business. This is the import of every case I have read concerning the responsibility of certificated carriers, none of which employ the theory espoused by the majority that a carrier who fails to comply with the regulations concerning surrender of possession and removal of the carrier's legend (49 C.F.R. secs. 1057.4(d) and 1057.4(d)(1)) assumes absolute responsibility for the leased vehicle.

The presence of the carrier's legend on the vehicle at the time of the accident at most would constitute some evidence that the vehicle was being used in the furtherance of the carrier's business. However, in his deposition in this case, Dixon (the owner-driver) plainly demonstrated that he was engaged in a purely personal pursuit. As the appellate court opinion pointed out, his trip had terminated when he returned the empty trailer to the carrier and he was under no further assignment from the carrier at that time. He could have trip-leased his vehicle to another carrier. He could have remained in Dubuque until he received a call for another trip from Rowley (the carrier-lessee), or he could have returned to his home, which he chose to do. This last fact seems to offset any presumption that Dixon was on the carrier's business at the time of the accident and would at lease create a question of fact, in which case the opinion should have remanded for a trial on this issue. In my opinion, however, no question of fact is

presented. The deposition of the driver, Dixon, filed in support of summary judgment, clearly indicates that at the time of the accident he was on a personal pursuit and in no way in furtherance of the carrier-lessee's business.