KREIDER TRUCK SERVICE, INC., Plaintiff-Appellee, *v.* HENRY AUGUSTINE *et al.*, Defendants-Appellants.

Fifth District   No. 77-446

Opinion filed October 5, 1978.

KARNS, J., dissenting.

Wiseman, Shaikewitz, McGivern & Wahl, of Alton, Dennis McGrady, of Gillespie, Charles Wesley, of Waynesville, Missouri, and Robert Droste, of Mt. Olive, for appellants.

Robert B. Maucker and Al J. Pranaitis, both of Hoagland, Maucker, Bernard & Almeter, of Alton, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal from a declaratory judgment action wherein the circuit court of Madison County found the plaintiff, Kreider Truck Service, Inc., not liable for injuries suffered by passengers on a shiftworkers' bus. The injuries resulted from a collision which occurred on Route 40, near Hamel, Illinois, between a shiftworkers' bus and a tractor-trailer. The tractor-trailer was owned by Mary Pfister, doing business as Milton Pfister Trucking (hereinafter referred to as Pfister), and driven by her employee, Darrel Reinacher. This same vehicle was being leased by Pfister to Kreider Truck Service (hereinafter referred to as Kreider).

This issue on appeal is whether the trial court erred in ruling that the plaintiff, under the facts and circumstances of the case, had no legal responsibility to the defendants.

The defendants contend that Kreider is liable pursuant to part II of the Interstate Commerce Act (49 U.S.C.A. §301 et seq. (1973)) and the Rules and Regulations of the Interstate Commerce Commission (49 C.F.R. §1057.4 (1976)), which set out the requirements to be followed by those traveling in interstate commerce under a lease agreement. This contention is based on the following facts.

For 17 years prior to his death, Milton Pfister of Highland, Illinois, had leased as an independent contractor certain tractors and trailers to the plaintiff, Kreider Truck Service, Inc. Subsequent to his death in March of 1973, Mary Pfister, widow of Milton and administratrix of his estate, continued to lease these tractors and trailers to Kreider. The leased tractors and trailers were driven for Kreider by Pfister employees in interstate commerce pursuant to Kreider's Interstate Commerce Commission (hereinafter I.C.C.) permit. The lease agreements between Kreider and Pfister provided that Kreider would not be liable when the equipment was not being used to further Kreider's business. An oral agreement also existed between Pfister and Kreider which allowed Pfister to drive the leased equipment on its own business when Kreider did not need to use it. The only stipulation placed upon Pfister in the oral

agreement was that the Kreider name and I.C.C. permit number, which appeared on the doors of the equipment, be covered.

At the hearing on the complaint for the declaratory judgment it was established that each day in the late afternoon Mary Pfister or one of her drivers would call Kreider to determine if Kreider had any interstate hauls which needed to be made the following day. Kreider had no hauls for Pfister on September 11, 1973. Thus, pursuant to the oral agreement between Pfister and Kreider, Mary Pfister instructed her drivers to use the equipment to pick up a load of limestone at the Mississippi Lime Plant in Alton, Illinois. The limestone was then to be delivered to a Pfister customer in Grantfork, Illinois. It was uncontroverted that this intrastate trip was being made pursuant to an Illinois Commerce Commission permit issued to the deceased, Milton Pfister. However, no copy of this permit was presented at the hearing.

Mary Pfister and two of her drivers, Darrell Reinacher and Richard Sexton, testified that when the equipment was used for Pfister's business the Kreider signs were to be covered with Pfister signs, which were available at the Pfister place of business near Highland, Illinois. The drivers also stated that they usually covered the Kreider signs; however, on September 11 they were in a hurry and forgot to cover them. Thus, when the accident occurred on September 11 the name Kreider Truck Service, Inc., and Kreider's I.C.C. permit number were visible on the cab doors of the tractor.

Subsequent to the accident Pfister's driver, Reinacher, gave a statement to the police, in which he stated that he worked for Kreider. However, at the hearing Reinacher testified that he worked for Mary Pfister, was paid by her, and on the day of the accident was doing business for her.

It was undisputed that on the day of the accident the Pfister equipment was being operated in intrastate commerce. Pfister could operate the equipment in question in intrastate commerce pursuant to its Illinois Commerce Commission permit. Kreider acknowledged that it was licensed by the Illinois Commerce Commission as an intrastate carrier; however, the Pfister equipment was not included in Kreider's intrastate permit. Reinacher testified that he had never driven in intrastate commerce for Kreider. Rather, he only drove the Pfister trucks for Kreider in interstate commerce pursuant to Kreider's I.C.C. permit. Pfister and Kreider acknowledged that their lease agreements had not been registered with the Illinois Commerce Commission.

■■■ The I.C.C. regulations controlling lease agreements were designed to protect the public by preventing an interstate carrier from escaping liability by means of a lease agreement with an independent contractor. The defendants contend that these rules and regulations impose vicarious liability upon a licensed interstate carrier for any negligent

operation of the leased equipment during the lease period, regardless of whether the equipment is being operated in interstate or intrastate commerce. However, we think it is apparent from the wording of section 302 of part II of the Interstate Commerce Act (49 U.S.C.A. §302(1973)), that the act does not apply to situations of intrastate commerce and therefore the provisions of part II of the Interstate Commerce Act (49 U.S.C.A. §301 *et seq.* (1973)) and the rules and regulations of the Interstate Commerce Commission (49 C.F.R. §1057.4 (1976)), have no applicability to the liability arising out of the accident in the case at bar. It is well recognized that the Interstate Commerce Commission does not have regulatory jurisdiction over intrastate shipments by motor carriers. *Southern Pacific Transportation Co. v. Interstate Commerce Com.* (9th Cir. 1977), 565 F.2d 615; *In re Grand Jury Subpoena Duces Tecum* (N.D. Ga. 1975), 405 F. Supp. 1192; *Tucker v. Casualty Reciprocal Exchange* (N.D. Ga. 1941), 40 F. Supp. 383.

Plaintiff cites the case of *Schmidbauer v. Baltimore & Pittsburgh Motor Express Co.* (1962), 228 Md. 637, 181 A.2d 325, wherein the Maryland Supreme Court held that part II of the Interstate Commerce Act does not impose liability on a lessee/interstate carrier when the nonowned equipment is being used in an activity that is not associated with interstate or foreign commerce. Because the facts of *Schmidbauer* are similar to the facts of the case at bar we find the Maryland opinion persuasive authority.

In *Schmidbauer,* Mr. Selle leased a tractor owned by him to Baltimore & Pittsburgh Motor Express Co. (hereinafter referred to as B & P), which was to be used in interstate commerce. B & P was licensed as an interstate carrier by the I.C.C.; Selle was not. B & P used Selle's tractor to haul B & P's trailers. Selle's tractor had decals on it which were provided by B & P and bore B & P's name and I.C.C. permit number. Selle was instructed by B & P to cross out the B & P name and permit number after arrival at their destinations.

The lease was not for a specified period of time. It provided Selle would have to make his tractor available to B & P whenever they wanted to use it. There was no rule as to the use of Selle's tractor when B & P did not need it.

On May 16, 1956, at 1:30 a.m., Selle was involved in a collision with an automobile while driving his tractor back to B & P's terminal after using it to see a movie. Selle had returned from an interstate haul for B & P on May 15, at approximately 9:30 p.m. At the time of the accident B & P's name and permit number had not been removed from the tractor. The Supreme Court of Maryland stated that despite the fact that the lessee's name and I.C.C. permit number appeared on the truck at the time of the accident, and despite the fact that the lessee had failed to obtain a receipt showing the return possession and control of the truck to the lessor,

liability could not be imposed on the lessee through the Interstate Commerce Act or its rules and regulations because the negligence of the lessor did not occur while in interstate or foreign commerce.

The defendants in the case at bar cite four cases which involved collisions between equipment leased to an I.C.C. permit carrier and another vehicle: *Schedler v. Rowley Interstate Transportation Co., Inc.* (1977), 68 Ill. 2d 7, 368 N.E.2d 1287; *Vance Trucking Co. v. Canal Insurance Co.* (D.S.C. 1966), 249 F. Supp. 33; *Mellon National Bank & Trust Co. v. Sophie Lines, Inc.* (3d Cir. 1961), 289 F.2d 473; and *Leotta v. Plessinger* (1960), 8 N.Y.2d 449, 171 N.E.2d 454. However, each of these cases involved interstate movement, thus invoking statutorily expressed jurisdiction of the Interstate Commerce Commission. If the equipment in the instant case was being used in an activity which was related to interstate commerce at the time of the collision in question, the I.C.C. rules and regulations would have been applicable and the lessee, Kreider, liable for the negligence of the independent contractor, Pfister. *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 368 N.E.2d 1287.

Since the I.C.C. rules and regulations are not applicable, we will consider the liability of Kreider under the relationship of independent contractor-lessee. The general rule is that an employer is not liable for the acts of an independent contractor. (*Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 302 N.E.2d 642.) There are exceptions to this rule; however, none are applicable here. The plaintiff suggests we consider the master-servant relationship. But even if this relationship existed between Pfister's driver and Kreider, the general rule is that the master is not liable for his servant's negligence when the servant is acting outside the scope of his employment. *Nelson v. Stutz Chicago Factory Branch, Inc.* (1930), 341 Ill. 387, 173 N.E. 394.

■■ It is apparent from the evidence that at the time of the accident the tractor-trailer driven by Reinacher was not being operated in interstate commerce in furtherance of Kreider's business. Rather it was being operated in intrastate commerce in the business of Pfister, pursuant to Pfister's Illinois Commerce Commission permit. It was also established that Pfister had directed Reinacher as to his route and destination and his salary was paid by Pfister. These facts reflect that Reinacher, Pfister's driver, was not operating within the scope of his employment for Kreider.

The oral agreement between Pfister and Kreider permitted Pfister to drive the leased equipment in its own business as long as the Kreider signs were covered. Pfister violated the agreement by not covering the Kreider signs.

■ The fact that Kreider's name and I.C.C. permit number were visible on the equipment at the time of the accident is insufficient to render

Kreider, the lessee, liable for the negligence of Pfister's driver. This is especially true when the negligence occurred while the leased equipment was not being operated in furtherance of the business of the lessee. (*Gudgel v. Southern Shippers, Inc.* (7th Cir. 1967), 387 F.2d 723.) The leases between Kreider and Pfister are also significant because they provided that Kreider would not be liable for Pfister's equipment when it was not being used in furtherance of Kreider's business.

In light of the foregoing, we conclude that the trial court did not err in entering its order finding that the plaintiff, Kreider Truck Service, Inc., is not liable for injuries sustained by the defendants. The judgment appealed from is affirmed.

Affirmed.

EBERSPACHER, P. J., concurs.

Mr. JUSTICE KARNS, dissenting:

I believe the holding in *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 368 N.E.2d 1287, requires the reversal of the decision of the trial court. The issue is not whether the instant movement was intrastate or interstate or whose business was being carried on, Pfister or Kreider, but compliance with the Lease and Interchange of Vehicles Rules and Regulations (49 C.F.R. §1057 (1976)) of the Interstate Commerce Commission.

A lease agreement between an authorized carrier-lessee (Kreider) and owner (Pfister) must comply with these rules and regulations. As discussed in detail in *Schedler*, the lease must provide for the assumption of responsibility by the lessee for the duration of the lease for the operation of the vehicle (1057.4(a)(2), (3), (4)). If possession and responsibility by the authorized carrier is to be terminated, the rules and regulations require the authorized carrier to obtain a receipt so stating from the owner at the time possession and control are surrendered to the owner-lessor, and require the authorized carrier, not the owner as the majority suggests, to remove or cover the required identifying decals and I.C.C. permit numbers from the vehicle (1057.4(b), (d), (d)(1)). At the time of the accident Kreider's name and I.C.C. permit number were on the doors of the tractor. Kreider did not obtain the required receipt from Pfister.

*Schedler* rejected the test of *respondeat superior* in fixing the responsibility of the authorized carrier in favor of the imposition of vicarious liability "regardless of the use being made of the vehicle at the time of the occurrence." (68 Ill. 7, 12, 368 N.E. 1287, 1289.) The court concluded by stating:

"We are of the opinion that it was the purpose of the regulatory scheme that the carrier-lessee be vicariously responsible to the public for the negligent operation of the leased vehicle without regard to whether at the time in question it was being used in the business of the lessee. (See *Cosmopolitan Mutual Insurance Co. v. White* (D. Del. 1972), 336 F. Supp. 92.) To hold otherwise would permit injecting into each case the issue of agency, scope of employment and purpose of the movement out of which the occurrence arose, thus defeating the declared purpose of the regulations to eliminate the problem of fixing responsibility for damages and injuries to members of the public. Absent proof of compliance with sections 1057.4(d) and 1057.4(d)(1), we hold that if Dixon is liable to plaintiff, defendant must be held vicariously liable." 68 Ill. 7, 12-13, 368 N.E.2d 1287, 1289.

I believe the breadth of this language requires the reversal of the summary judgment in favor of the plaintiff, Kreider Truck Service.