ELMER HERSHBERGER, Plaintiff-Appellant, *v.* HOME TRANSPORT COMPANY, Defendant-Appellee.—(CARL RAY *et al.*, Defendants.)

Second District    No. 81-329

Opinion filed January 22, 1982.

Larry M. Amoni, of Dickinson and Amoni, of Aurora, for appellant.

Peter K. Wilson, Jr., of Puckett, Barnett, Larson, Mickey, Wilson and Ochsenschlager, of Aurora, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:

Plaintiff, Elmer Hershberger, appeals from the dismissal, for failure to state a cause of action, of count III of his amended complaint against the defendant, Home Transport Company (Home).

Count III of the amended complaint alleged, in substance, that on February 18, 1978, Home was a common carrier by motor vehicle; that Home, under authority from the Interstate Commerce Commission (ICC), had leased a certain International Truck from the Churchill Leasing Company; that on that date, the legend, Home Transport Company, was displayed on the side of the cab of the truck, and Carl Ray, the driver of the truck, was under the defendant's dispatch order to transport goods from the Keen Transport Terminal in Oswego, Illinois; that pursuant to his dispatch order, Ray entered upon the premises of the Keen Transport Terminal and, without provocation, struck the plaintiff about the face and head with great force and violence; and that as a result thereof the plaintiff was injured and damaged.

To withstand a motion to dismiss, a complaint must allege facts sufficient to set forth the essential elements of the cause of action. (*Kolton v. K & L Furniture & Appliances, Inc.* (1979), 82 Ill. App. 3d 868, 873.) All well-pleaded facts and reasonable inferences are taken as true, and the allegations are viewed in the light most favorable to the plaintiff. (*Denkewalter v. Wolberg* (1980), 82 Ill. App. 3d 569, 571-72; *Kenneke v. First National Bank* (1978), 65 Ill. App. 3d 10, 12.) However, a liberal construction of the pleading cannot remedy a failure to allege necessary facts. *Kirby v. Chicago City Bank & Trust Co.* (1980), 82 Ill. App. 3d 1113, 1118; *Kolton v. K & L Furniture & Appliances, Inc.* (1979), 82 Ill. App. 3d 868, 873.

Applying these standards to the allegations of count III of plaintiff's amended complaint, we agree with the trial court that it failed to state a cause of action.

Plaintiff argues that, because on the date in question, Home was a licensed carrier holding authority from the ICC, he need allege only the following to state a cause of action against Home: that Home was a licensed carrier; that Home leased the motor vehicle in question; that Ray was the driver of the leased vehicle; and that Home had its legend on the vehicle at the time of the occurrence. Such allegations, he suggests, constitute all of the elements required under the Interstate Commerce Act and its applicable regulations.

Under the Interstate Commerce Act (49 U.S.C. §301 *et seq.* (1976)), the ICC is authorized to prescribe regulations "with respect to the use by motor carriers (under leases, contracts, or other arrangements) of motor homes not owned by them, * * *" and "such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they are the owners of such vehicles * * *." 49 U.S.C. §304(e)(1976); *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 10-11.

Pursuant to that authorization, the ICC has adopted rules and regulations. Specifically pertinent to this case is a regulation which requires that "[t]he lease shall provide for the exclusive possession, control, and use of the equipment and for the complete assumption of responsibility thereto by the lessee for the duration of said contract, lease or other arrangement." 49 C.F.R. §1057.4(a)(4)(1978).

■■ Accordingly, during the full term of a motor-vehicle lease subject to ICC regulations, the lessee has exclusive possession and control of the leased vehicles, and assumes responsibility for their operation to the same extent as if the lessee owned the vehicle and employed the drivers. 49 U.S.C. §304(e)(1976); 49 C.F.R. §1057.4(a)(4)(1978); *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.* (1975), 423 U.S. 28, 39, 46 L. Ed. 2d 169, 178, 96 S. Ct. 229, 235; see *Gunterberg v. B & M Transportation Co., Inc.* (1975), 27 Ill. App. 3d 732; *Hartford Accident & Indemnity Co. v. Major* (1967), 81 Ill. App. 2d 251.

■■ As pointed out by our supreme court in *St. Paul Fire & Marine Insurance Co. v. Frankart* (1977), 69 Ill. 2d 209, 213, the main thrust of the regulations is to prevent licensed carriers from escaping liability to injured members of the public by claiming that their lessor-drivers were independent contractors rather than employees. Our supreme court has also held that under the regulatory scheme it is not necessary for the injured persons to establish that the carrier had a right to control the lessor-driver's activities or that the lessor-driver was acting within the scope of his employment. (*Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 13.) In *Schedler*, the court further stated that "the purpose of the regulatory scheme that the carrier-lessee be vicariously responsible for the negligent operation of the leased vehicle without regard to whether at the time in question it was being used for the business of the lessee." 68 Ill. 2d 7, 12-13; see *Kreider Truck Service, Inc. v. Augustine* (1979), 76 Ill. 2d 535, 540-41.

■■ ■ We also agree, as apparently do the parties, that under the regulatory scheme a licensed carrier might be held liable for a driver's intentional tort (*Gunterberg v. B & M Transportation Co.* (1975), 27 Ill.

App. 3d 732; see *Indiana Refrigerator Lines, Inc. v. Dalton* (6th Cir. 1975), 516 F.2d 795, *cert. denied* (1975), 423 U.S. 985, 46 L. Ed. 2d 302, 96 S. Ct. 392). But this is not to say that the conduct of the driver which gives rise to the injury need not have some nexus with the commercial activity which the ICC sought to regulate. The primary goals of the ICC regulation which imposes responsibility on a carrier are (1) to prevent ICC carriers from avoiding safety standards imposed by the ICC by the simple practice of leasing equipment from nonregulated carriers; (2) to promote highway safety by insuring that drivers furnished by exempt carriers as part of the leased agreement do not violate safety regulations of the leased equipment; and (3) to provide shippers and other members of the public with financially responsible carriers. (*Indiana Refrigerator Lines, Inc. v. Dalton* (6th Cir. 1975), 516 F.2d 795, 796.) In light of these purposes, we conclude that the plaintiff must plead facts which would indicate that the driver's conduct, which allegedly caused plaintiff's injury, was in some way related to the commercial activities which the ICC seeks to regulate.

In his reply brief, plaintiff suggests that his allegation that Ray was at the transport terminal and under the defendant's dispatch order at the time of the incident is sufficient to raise a question of fact to be decided by a jury as to whether the occurrence was related to the commercial operations of the defendant. We disagree. The fatal flaw in plaintiff's argument, and in the allegations of count III of his amended complaint, is that he fails to set forth facts from which any reasonable inference can be drawn that the assault upon plaintiff by Ray was in anyway related to the violation of safety standards or to the maintenance and operation of equipment by the driver or other employees of the lessor-owner. Nor can an inference be drawn from the facts as alleged that the attack upon the plaintiff was in anyway related to any of the activities which the Interstate Commerce Commission sought to regulate. There is nothing in the allegations to even suggest, for example, that Ray's attack upon the plaintiff had anything to do with his dispatch orders, the parking of the leased vehicle at the terminal, or some prior disagreement between the plaintiff and the driver Ray with regard to the operation of the leased equipment.

Our examination of the cases cited by the parties (*e.g., Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7; *Kreider Truck Service, Inc. v. Augustine* (1979), 76 Ill. 2d 535; *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.* (1975), 423 U.S. 28, 46 L. Ed. 2d 169, 96 S. Ct. 229; *St. Paul Fire & Marine Insurance Co. v. Frankart* (1977), 69 Ill. 2d 209), as well as our independent research, disclosed no cases where the conduct which gave rise to the cause of action was unrelated to the commercial activities sought to be governed by the Interstate Commerce Commission through its rules and regulations. Such relationship is a necessary element of any cause of action which seeks to

impose liability upon the licensed carrier under the Federal regulatory scheme.

The order of the trial court dismissing count III of the amended complaint is affirmed.

Affirmed.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.