JOEL WHEELER, Plaintiff, *v.* SCOTT T. ELLISON *et al.*, Defendants (Scott T. Ellison *et al.*, Third-Party Plaintiffs-Appellants, *v.* Chief Truck Lines, Inc., Third-Party Defendants-Appellees; Caravan Refrigerated Cargo, Inc., Counterplaintiff, *v.* Richard Mindemann, d/b/a/ Mindemann Trucking Company, Counterdefendant).

Second District   No. 2—83—0117

Opinion filed June 1, 1984.

Robert K. Clark, of Clark & Heaslip, of Rockford, for appellants.

Joel S. Ostrow, Philip J. McGuire, and Michael E. Dowd, all of Dowd & Dowd, of Chicago, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant and third-party plaintiff, Richard Mindemann (Mindemann), and defendant and third-party plaintiff, Scott T. Ellison (Ellison) (together referred to as third-party plaintiffs), appeal from an order of the circuit court of Winnebago County entering judgment on the pleadings in favor of third-party defendant and appellee Chief Truck Lines, Inc. (Chief). Third-party plaintiffs contend that count I of their complaint seeking indemnity from Chief and count II seeking contribution under the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1981, ch. 70, par. 301 *et seq.*) (Act) properly stated valid causes of action. Chief responds that third-party plaintiffs are precluded from asserting their indemnity claim because of their active negligence and that third-party plaintiffs' contribution claim is unwarranted because Chief's actions did not contribute to plaintiffs' injuries. We affirm.

Chief is the holder of a license under the authority of the Interstate Commerce Commission (ICC) to carry freight interstate. In order to ship a freight load to the State of Florida, Chief as carrier-les-

see entered into a lease agreement on January 14, 1980, with lessor Mindemann. Under the terms of the lease, Chief leased from Mindemann a truck owned by Mindemann. Mindemann agreed to furnish his own driver to transport the shipment tendered by Chief. The lease further provided that "[s]uch employee-drivers, driver-helpers and laborers are understood to be employees of the Contractor [Mindemann], and Contractor shall be solely responsible for the direction and control of such employees***." In addition, the lease contained the provision that if Chief were unable to provide a return load for the trip from Florida to Illinois, Mindemann could enter into a trip-lease arrangement with another interstate carrier so long as the load handled on the trip-lease basis was destined for a point within a 50-mile radius of Chief's home terminal point.

Sometime during June 1980, Ellison, acting as an employee of Mindemann, transported Chief's shipment to Florida using Mindemann's truck according to the terms of the lease agreement between Chief and Mindemann. Chief did not have a return load, so Ellison leased the truck space on Mindemann's behalf to defendant Caravan Refrigerated Cargo, Inc. (Caravan), for a return load to Macomb, Illinois. Ellison completed the trip to Macomb and then drove to Rockford, where he was involved in an accident with plaintiff, Joel Wheeler (Wheeler), who was operating a motorcycle at the time of the accident.

In a one-count complaint filed on June 16,1981, Wheeler alleged that Ellison, employed as agent of Mindemann and Caravan, operated his truck negligently and struck Wheeler's motorcycle. The truck when involved in the accident displayed Chief's legend on the cab. On July 19, 1982, Ellison and Mindemann filed their two-count third-party complaint against Chief; count I sought indemnity and count II sought contribution. Chief filed a motion to dismiss or in the alternative for judgment on the pleadings. On January 6, 1983, the trial court granted judgment on the pleadings in favor of Chief as to both the indemnity and contribution counts. The trial court denied the motion of third-party plaintiffs for reconsideration, entered a finding pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)), and third-party plaintiffs filed a timely notice of appeal.

■ The first question presented is whether this court has jurisdiction to hear this appeal. Chief argues that third-party plaintiffs' notice of appeal is defective because it recites only that the appeal is taken from "the Order of the Circuit Court of the 17th Judicial Circuit of the County of Winnebago, State of Illinois, entered in said cause on January 20, 1983, in favor of Third Party Defendants-Appellee,

CHIEF TRUCK LINES, INC., for dismissal with prejudice and costs of suit." Since the notice of appeal does not refer to the final judgment on the pleadings which was entered on January 6, 1983, and instead only refers to the January 20 nonfinal order denying the motion for reconsideration, Chief contends third-party plaintiffs have failed to confer jurisdiction upon this court.

A notice of appeal must "specify the judgment or part thereof appealed from." (73 Ill. 2d R. 303(c)(2).) An appellate court may not review a matter which is not raised as an issue in the notice of appeal unless the deficiency is one of form and not substance. (*In re Estate of Malloy* (1981), 96 Ill. App. 3d 1020, 422 N.E.2d 76.) A notice of appeal is jurisdictional, but where the deficiency is one of form only, the reviewing court is not necessarily deprived of jurisdiction especially where the appellee is not otherwise prejudiced. (*Illinois Bell Telephone Co. v. Purex Corp.* (1980), 90 Ill. App. 3d 690, 413 N.E.2d 106.) The notice of appeal in the instant case is sufficient to confer appellate jurisdiction. While third-party plaintiffs should have referred to the final judgment entered January 6, 1983, granting judgment on the pleadings, the error was one of form, not substance. Chief has not alleged nor shown prejudice resulting from the error. In their appellate briefs, the parties argue the merits of the order entering judgment on the pleadings; thus, Chief has not been misled by the notice of appeal. Chief was informed by the notice that third-party plaintiffs were appealing the order dismissing the lawsuit with prejudice. The notice of appeal included the substance if not the date of the court's January 6, 1983, order and the appeal was filed within 30 days of the final judgment entered on January 6, 1983. Therefore, this court has jurisdiction to entertain this appeal. See *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877; *Illinois Bell Telephone Co. v. Purex Corp.* (1980), 90 Ill. App. 3d 690, 413 N.E.2d 106.

Third-party plaintiffs assert that their complaint stated a cause of action for implied indemnity. Third-party plaintiffs argue the lease agreement between Mindemann and Chief establishes the existence of a pretort relationship and further, that the complaint alleges a qualitative distinction between the conduct of the parties. In response, Chief argues that this court should rule that the doctrine of indemnity has not survived the adoption in Illinois of contribution among joint tortfeasors. Even if indemnity is still viable, Chief contends, the complaint of third-party plaintiffs failed to state a cause of action because it did not allege a qualitative distinction between the conduct of the parties; a necessary element in an implied indemnity cause of action. Chief further argues that the pleadings demonstrate it and not third-

party plaintiffs is entitled to indemnification based upon the terms of the parties' agreement.

■ Chief moved for judgment on the pleadings under section 2—615(e) of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—615(e).) The rules pertaining to judgment on the pleadings are well settled.

> "A motion for judgment on the pleadings: requires an examina-
> tion of the pleadings to determine the existence or absence of
> an issue of fact, or whether the controversy can be resolved
> solely as a matter of law, or not; admits all well-pleaded facts
> set forth in the respondent's pleadings; draws all fair infer-
> ences from the respondent's pleadings; and contemplates that
> the moving party is entitled to judgment as a matter of law."
> (*Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.*
> (1981), 100 Ill. App. 3d 924, 927, 427 N.E.2d 317, 319.)

In reviewing an order granting judgment on the pleadings, the appellate court must ascertain whether the trial court determined correctly that no genuine issue of material fact was presented by the pleadings, and if there was no such issue, whether judgment was entered correctly. *Teeple v. Hunziker* (1983), 118 Ill. App. 3d 492, 454 N.E.2d 1174; *Kemper v. Worcester* (1982), 106 Ill. App. 3d 121, 435 N.E.2d 827.

■ A third-party complaint in an action for indemnity must allege a qualitative difference between the negligence of the two third-parties. (*Bednar v. Venture Stores, Inc.* (1982), 106 Ill. App. 3d 454, 436 N.E.2d 46; *Burgdorff v. International Business Machines* (1975), 35 Ill. App. 3d 192, 341 N.E.2d 122.) Some courts have also stated the requirement that the complaint allege a pretort relationship between the parties, but one commentator disputes whether Illinois courts have required the pretort relationship in addition to the requirement of a qualitative difference between the two parties' negligence. (See Kissel, *Developments in Third-Party Practice-Contribution and Indemnity,* 71 Ill. B.J. 654, 664-65 (1983).) In any event, this requirement is satisfied in this case because Illinois courts have recognized that a lease between the parties, as is alleged here, is sufficient to constitute a pretort relationship. See, *e.g., Mierzejwski v. Stronczek* (1968), 100 Ill. App. 2d 68, 241 N.E.2d 573; *Blaszak v. Union Tank Car Co.* (1962), 37 Ill. App. 2d 12, 184 N.E.2d 808.

■ To satisfy the qualitative difference requirement, a party must demonstrate that his fault for the injuries of the original plaintiff is different in quality or nature, rather than in quantity, from that of the proposed indemnitor. (*Harris v. Algonquin Ready Mix, Inc.*

(1974), 59 Ill. 2d 445.) One who is actively negligent will not be allowed to shift responsibility to another person regardless of the relative degree of their negligence. (*Carver v. Grossman* (1973), 55 Ill. 2d 507.) The facts of the case in which indemnity is sought "must clearly justify indemnification" (55 Ill. 2d 507, 512), as application of another standard would permit the total shifting of responsibility to one negligent party while permitting the other to escape responsibility for his negligent conduct (55 Ill. 2d 507, 512). What constitutes active negligence so as to preclude the shifting of liability between joint tortfeasors is not susceptible of precise definition and depends upon the facts of a particular case. (*Moody v. Chicago Transit Authority* (1974), 17 Ill. App. 3d 113, 307 N.E.2d 789.) A party is not entitled to indemnification where he has breached an affirmative duty to the plaintiff in the underlying action, as the indemnitee's negligence must be of a "technical" or secondary nature. *Burgdorff v. International Business Machines* (1975), 35 Ill. App. 3d 192, 341 N.E.2d 122.

■ We believe judgment on the pleadings was granted properly on the indemnity count. " '*** [O]ne is passively negligent if he merely fails to act in fulfillment of a duty of care which the law imposes on him ***. One is actively negligent if he participates in some manner in the conduct or omission which caused the injury.' " (*Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 193, 229 N.E.2d 769, 772, quoting *King v. Timber Structures, Inc.* (1966), 240 Cal. App. 2d 178, 49 Cal. Rptr. 414.) By this definition, Ellison who drove the truck which was involved in the automobile accident was actively negligent. Mindemann as employer of Ellison was responsible for his negligence under the doctrine of *respondeat superior*. Chief became responsible for the truck's operation only because of its identifying signs on the truck. While under the governing ICC regulations, plaintiff was entitled to sue Chief directly (see *Kreider Truck Service, Inc. v. Augustine* (1979), 76 Ill. 2d 535), Chief's liability can hardly be characterized as active while the actions of Ellison, the driver, and Mindemann, the owner, are labeled as passive or merely technical negligence. As the third-party plaintiffs were actively negligent, they are not entitled to indemnification. (*Carver v. Grossman* (1973), 55 Ill. 2d 507.) Since we conclude third-party plaintiffs are not entitled to indemnity, we need not decide whether the doctrine of implied indemnity has survived the adoption of the contribution rule in Illinois. See *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 350-51.

Third-party plaintiffs' reliance on *Long v. Bucyrus-Erie Co.* (1983), 112 Ill. App. 3d 578, 445 N.E.2d 934, does not mandate a dif-

ferent result. There, the plaintiff brought a negligence action against Consolidated Coal Co. (Consol), the owner of the mine site. Consol in turn filed a third-party complaint against the employer of the plaintiff, F & E Erection Company (F & E). The jury ruled that Consol was not entitled to indemnification from F & E. In affirming the trial court's denial of Consol's motion for judgment notwithstanding the verdict, the appellate court emphasized that the jury's verdict and the evidence demonstrated that Consol was guilty of active negligence in causing the plaintiff's injury. At trial, evidence was presented that Consol was involved in aspects of worker safety and the appellate court found that this control created a duty of care which Consol had breached. Third-party plaintiffs argue that like the owner of the mine site in *Long,* Chief exercised control over the truck based upon the ICC regulations. *Long,* however, actually supports Chief's position, for that court ruled that Consol was precluded from seeking indemnification because of its own active negligence. Similarly, the active negligence of third-party plaintiffs here prevents them from obtaining indemnification from Chief.

■ Nor are third-party plaintiffs entitled to implied indemnity based upon the lease agreement. Paragraph 20 of the lease provides that "Contractor [Mindemann] will indemnify Carrier [Chief] for any loss, damage, or expense whatsoever which Carrier may sustain or become liable for as a result of any act or acts or failure to act, as provided in this agreement, of Contractor, his servants, employees, or representatives, excepting any amount thereof for which Carrier is compensated under any applicable insurance or otherwise." The Supreme Court in *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.* (1975), 423 U.S. 28, 41, 46 L. Ed. 2d 169, 179, 96 S. Ct. 229, 236, specifically upheld the validity of such agreements, stating the indemnity clause was not violative of public policy:

> "We hold only that the presence in an equipment lease of an indemnification clause directed to the lessor's negligence is not in conflict with the safety concerns of the Commission or with the regulations it has promulgated."

Therefore, rather than providing third-party plaintiffs with a cause of action for implied indemnity, the lease agreement empowers Chief to recover for any damages assessed against it because of the negligent acts of third-party plaintiffs. We hold that the trial court properly entered judgment in favor of Chief as to count I of the third-party complaint.

Third-party plaintiffs also contend that the trial court erred in entering judgment on count II of their complaint seeking contribution

from Chief under the Act. (Ill. Rev. Stat. 1981, ch. 70, par. 301 *et seq.*) They contend that the lease agreement coupled with Chief's legend affixed to the truck makes Chief vicariously liable for the acts and omissions of Ellison, the driver of the truck. Third-party plaintiffs argue that under the terms of the statute, Chief is liable because both Chief and third-party plaintiffs were subject to liability in tort for the same injury. In response, Chief contends that the cases cited by third-party plaintiffs all involve two defendants with separate duties owed to the plaintiff. In contrast, Chief claims, here both third-party plaintiffs and Chief owed only one duty to plaintiff-that of ordinary care in the operation of the truck.

Prior to 1978, Illinois courts adhered to the rule that joint tort-feasors were not entitled to contribution. Our supreme court, however, in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849, overturned this rule and held that joint tort-feasors were entitled to contribution. Subsequently, the Illinois legislature enacted the Contribution Act to codify, and not to restrict the *Skinner* rule. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 8.) Section 2(a) provides "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." (Ill. Rev. Stat. 1981, ch. 70, par. 302(a).) The "same injury," that to plaintiff in the original suit, undeniably is involved and is not disputed by the parties. Therefore, the question presented under the statute is whether Chief is "subject to liability in tort."

Case law interpreting the Interstate Commerce Act (49 U.S.C. sec. 301 *et seq.* (1976)) and its regulations makes clear that plaintiff could have sued Chief directly. Under the Interstate Commerce Act, the ICC is authorized to promulgate regulations "with respect to the use by motor carriers (under leases and contracts), of motor homes not owned by them, ***" and "such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they were the owners of such vehicles ***." 49 U.S.C. sec. 304(e) (1976); *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 10-11.

Pursuant to that authorization, the ICC has adopted rules and regulations several of which are specifically pertinent to this case. Rule 1057.4(a)(4) states "[t]he lease shall provide for the exclusive

possession, control, and use of the equipment and for the complete assumption of responsibility thereto by the lessee for the duration of said contract, lease or other arrangement." (49 C.F.R. sec. 1057.4(a)(4) (1978).) Rule 1057.4(d)(1) provides that "[t]he authorized carrier operating equipment under this part shall remove any legend, showing it as the operating carrier, displaying on such equipment and shall remove any moveable device showing it as the operating carrier, before relinquishing possession of that equipment." (49 C.F.R. sec 1057.4(d)(1) (1978); *Occidental Fire & Casualty Co. v. Padgett* (1983), 113 Ill. App. 3d 215, 220, 446 N.E.2d 937, 940.) The import of these regulations is that the lessee has exclusive possession and control of and responsibility for these vehicles (*Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.* (1975), 423 U.S. 28, 39, 46 L. Ed. 2d 169, 178, 96 S. Ct. 229, 235), and such possession is not terminated until the legends are removed from the lessor's vehicle. Absent compliance with Rule 1057.4(d)(1), the lessee remains in possession and is vicariously liable for the negligence of the lessor's driver. *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 13.

In *St. Paul Fire & Marine Insurance Co. v. Frankart* (1977), 69 Ill. 2d 209, 213, the court identified the main purpose of the regulations; to prevent licensed carriers from escaping liability to injured members of the public by claiming that the lessor-drivers were independent contractors rather than employees. Thus, injured persons need not establish that the carrier had the right to control the lessor-driver's activity or that the lessor-driver was acting within the scope of his employment. (*Kreider Truck Service, Inc. v. Augustine* (1979), 76 Ill. 2d 535, 540-41; *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 13.) This court recently has articulated several additional goals underlying the ICC regulations imposing responsibility on the carrier-lessee:

> "(1) to prevent ICC carriers from avoiding safety standards imposed by the ICC by the simple practice of leasing equipment from nonregulated carriers; (2) to promote highway safety by insuring that drivers furnished by exempt carriers as part of the leased agreement do not violate safety regulations of the leased equipment; and (3) to provide shippers and other members of the public with financially responsible carriers." *Hershberger v. Home Transport Co.* (1982), 103 Ill. App. 3d 348, 352, 431 N.E.2d 72, 75.

Third-party plaintiffs argue that the vicarious liability is sufficient to support a contribution action and rely upon this court's recent deci-

sion in *Morgan v. Kirk Brothers, Inc.* (1982), 111 Ill. App. 3d 914, 444 N.E.2d 504. In *Morgan*, the plaintiff brought a suit for injuries she received when the automobile in which she was a passenger collided with a truck owned by Kirk Bros. Kirk Bros. then filed a third-party complaint against three taverns alleging that they served alcoholic beverages to the driver of the car in which plaintiff was a passenger. The driver became intoxicated, collided with the defendant, and directly and proximately caused the plaintiff's injuries, the question presented in *Morgan* was whether the Act allowed a cause of action for contribution against a party whose liability arose from a violation of the Dramshop Act. (Ill. Rev. Stat. 1981, ch. 43, par. 135.) The trial court granted the dramshop's motion to dismiss the third-party complaint finding as a matter of law that Kirk Bros. could not obtain contribution from a party subject to potential dramshop liability. On appeal, this court reversed.

Mindemann contends that certain of the arguments raised by the tavern in *Morgan* are pertinent here. The one dramshop on appeal argued its liability to plaintiff was based not in tort, but rather upon a purely statutory regulation of its status which imposed liability without fault for the sale of alcohol proven to cause intoxication of the customer. Rejecting this argument, this court held that a tavern acts as a wrongdoer when it serves alcohol which causes intoxication and thereafter injury. The Dramshop Act, this court found, prescribes a standard of conduct to which those within its scope are required to conform. Third-party plaintiffs argue that like the dramshop's liability under the Dramshop Act, Chief as the carrier-lessee violated the tort duty created by the ICC regulations and statute. Chief attempts to distinguish this case by stating that in other contribution cases, the third-party plaintiff and third-party defendant owed separate duties to the plaintiff. In the *Morgan* case for example, the dramshop owed a duty not to serve alcohol which created the intoxication causing the injury. The driver owed a separate duty not to operate his car in an unsafe manner. In contrast, Chief argues that in the case at bar, Chief, Ellison and Mindemann all owe the same duty of care; to ensure the safe operation of the truck.

■ The Act contains only two express requirements: that the parties be (1) subject to liability, (2) for the same injury. (Ill. Rev. Stat. 1981, ch. 70, par. 302; *Morgan v. Kirk Brothers, Inc.* (1982), 111 Ill. App. 3d 914, 444 N.E.2d 504.) We are hesitant, therefore, to engraft upon the statute the requirement that both tortfeasors owe separate duties to the original plaintiff. Nevertheless, we agree with Chief's conclusion that third-party plaintiffs were not entitled to maintain

their contribution action. As previously noted, the Act codified the rule announced in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849. In *Skinner*, the court held "that the third-party complaint, although pleaded in terms of negligence, alleges misuse of the product and assumption of risk on the part of the employer and states a cause of action for contribution based upon the relative degree to which the defective product and the employer's misuse of the product or its assumption of the risk *contributed* to cause plaintiff's injuries." (Emphasis added.) (70 Ill. 2d 1, 16.) This holding clearly articulates the requirement that the actions of both tortfeasors have contributed to the injuries suffered by the plaintiff.

An examination of several recent decisions finding a cause of action under the Act reveals that the actions of the joint tortfeasors in each case "contributed" to the plaintiff's injuries. For example, in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, the court held that the third-party defendant highway contractor was subject to a contribution action filed by the defendant and third-party plaintiff motorist who struck the plaintiff highway flagman. Both tortfeasors there contributed to the plaintiff's injuries: the defendant and third-party plaintiff was alleged to have operated her car in a negligent manner and the highway contractor allegedly acted negligently and in violation of "An Act to protect workers and the general public from injury or death during construction or repair of bridges and highways * * *" (Ill. Rev. Stat. 1981, ch. 121, par. 314.1 *et seq.*). As the *Doyle* court stated, "the intent of the contribution statute was to reach anyone who is culpable regardless of whether they have been immunized from a direct tort action by some special defense or privilege." (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 9.) A similar statement was made by the appellate court in *Rhodes*.

> "One who is culpable in contributing to an injury in the sense that his wrongful conduct in some part caused the injury may be liable for contribution under the broad language of the statute." *Doyle v. Rhodes* (1982), 109 Ill. App. 3d 590, 593, 440 N.E.2d 895, 897.

Similarly, in *Morgan v. Kirk Brothers, Inc.* (1982), 111 Ill. App. 3d 914, 444 N.E.2d 504, the defendant and third-party plaintiff driver owed a duty not to operate his motor vehicle in a negligent fashion and the dram shops owed a statutory duty not to sell or give intoxicating liquors which in fact caused "the intoxication of persons and as a result of the intoxication cause[d] injury to others." (111 Ill. App. 3d 914, 918, 444 N.E.2d 504, 507.) This court in *Morgan* reiterated its

earlier statement in *Rhodes* that one who is culpable may be liable for contribution.

■ In contrast to the circumstances in *Skinner, Rhodes* and *Morgan*, Chief is not culpable in the sense that its wrongful conduct contributed to plaintiff's injuries. The third-party complaint alleges only that third-party defendant is liable because of the lease agreement and because its legend was displayed on Mindemann's truck. As we have previously stated, however, the lease agreement makes third-party plaintiffs and not Chief liable for plaintiff's injuries. Furthermore, while the Interstate Commerce Act and its regulations require the carrier-lessee to be liable in negligence to injured members of the public, the Supreme Court in *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.* (1975), 423 U.S. 28, 46 L. Ed. 2d 169, 96 S. Ct. 229, approved of private agreements between the carrier-lessee and the lessor allocating between them the risk of loss because of the driver's negligence. The fact that Chief's legends were on Mindemann's truck while subjecting Chief to vicarious liability also does not support a contribution action. In no way can we construe this vicarious liability imposed because of the legends as wrongful conduct contributing to plaintiff's injuries or as similar in nature to a dramshop's sale of alcohol or an employer's misuse of a defective product. As the trial court aptly stated, "The letters on the truck in no way contributed to the accident in this case." Absent culpable conduct which somehow contributed to plaintiff's injuries, we conclude the trial court properly held that a contribution action against third-party defendant could not lie.

Mindemann responds, however, that the public policy underlying the Interstate Commerce Act and its regulations supports the contribution action in this case. In *Morgan*, where as here liability was predicated on a statute, we examined the statute's public policy in determining whether contribution should lie. After reviewing *Morgan*, the trial court concluded that allowing a contribution action would not serve the public policy underlying the statute of protecting injured members of the public because "[w]e're not faced with Chief's liability to the original plaintiff in this case." We agree. That public policy, as articulated by our supreme court, is to eliminate the need for the injured member of the public to establish which party had control of the vehicle and driver at the time of the accident. We interpret Mindemann's contribution action as an attempt to share the burden of its liability with another party whose actions were not culpable and did not contribute to plaintiff's injuries in the case at bar. Our holding in no way restricts a plaintiff's existing right to sue directly the carrier-

lessee who displays its legends on a lessor's vehicle.

Accordingly, we affirm the order of the circuit court of Winnebago County granting judgment on the pleadings to third-party defendant Chief Truck Lines, Inc.

Affirmed.

SEIDENFELD, P.J., and UNVERZAGT, J., concur.