## CHARLES GACKSTETTER v. DART TRANSIT COMPANY AND ANOTHER.

130 N. W. (2d) 326.

August 21, 1964—No. 38,879.

*Mahoney & Mahoney, Richard P. Mahoney,* and *Peter J. Hiniker,* for appellant.

*Firestone, Fink, Krawetz, Miley & O'Neill,* for respondent.

ROGOSHESKE, JUSTICE.

Action to recover for personal injuries sustained in a collision between plaintiff's motor vehicle and defendant George Merrell's tractor-truck that was being operated while under a lease to defendant Dart Transit Company. At the conclusion of the evidence, the court directed a verdict on the issue of liability against defendant Merrell and in favor of defendant Dart. Plaintiff appealed from the judgment entered in Dart's favor.

Two questions are presented: Whether the tractor was being operated by Merrell in the course and scope of his employment with Dart, and whether the relationship between Dart and Merrell as expressed by the terms of the lease agreement required by Federal and state regulations makes Dart liable for Merrell's negligence any time he operated the tractor with Dart's permission.

The accident happened on August 19, 1959, in St. Paul. As plaintiff was driving his automobile south on Robert Street it was struck from behind by another vehicle propelled by the force of having been struck from behind by a tractor-truck driven by defendant George Merrell. At the time of the accident the tractor was owned by defendant Merrell but was under an exclusive lease to defendant Dart Transit Company. Dart is a specialized common carrier operating under certificates issued by the Interstate Commerce Commission and the Minnesota Railroad and Warehouse Commission. The lease instrument which was prepared by the carrier-lessee contained provisions required by the rules of the I. C. C. and is the basis upon which the plaintiff sought to hold Dart liable for Merrell's negligence. The critical provision is as follows:

"It is understood that *the leased equipment* under this agreement *is in the exclusive possession, control, and use of the authorized carrier, Lessee, and that the said Lessee assumes full responsibility in respect to the equipment it is operating, to the public,* the shippers and the I. C. C. (The lessee shall be considered as owner for the purpose of sub-leasing under the rules of the I. C. C. to other authorized Carriers during the duration of this lease.)" (Italics supplied.)[1]

---

[1]The rules on which this provision is based are found in 49 CFR (Rev. 1964) § 207.4. The rules concerning exclusive possession and responsibility for nonowned equipment were promulgated pursuant to the provisions of the Motor Carrier Act of 1935, 49 Stat. 543, as amended, 70 Stat. 983, 49 USCA, § 304(e)(1, 2). For the purpose and constitutionality of the rules, see American Trucking Assns. v. United States, 344 U. S. 298, 73 S. Ct. 307, 97 L. ed. 337. Subparagraph 4 of § 207.4 of the rules permitting franchised carrier to perform authorized transportation with leased equipment requires that the lease "[s]hall provide for the exclusive possession, control, and use of the equipment, and for the complete assump-

148

Since the date of the lease on March 3, 1959, Merrell drove the leased tractor, referred to above as the leased equipment, in hauling trailers for Dart to various parts of the country in accordance with dispatch orders and directions issued by Dart. He kept and filed with Dart a daily log of his activities and identified the tractor with appropriate placards or decals bearing Dart's name, address, and permit numbers in accordance with the rules of the I. C. C. Dart financed the costs of maintenance for Merrell, permitting him to reimburse them and to use their garage for repairs. They deducted 25 percent of the freight charges earned by Merrell to cover trailer rentals, charges for services in securing loads, and other operating expenses. Shortly before the accident on August 19, Merrell drove his tractor from the Fruehauf Trailer Company (where it had been painted) to Dart's terminal to advise them that he was ready for a load the next morning. The president and dispatcher of Dart gave Merrell new placards or decals to affix to the tractor and gave Merrell instructions and a "trip settlement sheet" which directed him to pick up a trailer loaded with glue at the Armour & Company plant at South St. Paul the next morning, August 20, 1959, and to take it to Chicago. Merrell testified that after receiving these instructions he told them that he was going to drive to his home at Hampton, Minnesota, located south of St. Paul. Although Mr. Oren, the president of Dart, testified at one point in the trial that Merrell was definitely instructed that the tractor should remain in St. Paul at the terminal when he was not engaged in hauling trailers, no objection was made to this use of the tractor. Since Merrell testified he made

tion of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement, except: * * *."

The comparable regulations of the Minnesota Railroad and Warehouse Commission, Motor Bus and Truck Division, provide:

"2. The leased vehicle shall be under the exclusive control of, and its operation the sole responsibility of, the lessee.

"3. * * * if the owner-lessor is to be the driver or is to furnish the driver, such driver shall be as an employee of the lessee, * * * and the lessee shall assume the same responsibility with reference to such owner-driver as lessee does or would to any other employee."

Minnesota Regulations, Title IX, 9015(c), 9027(k), (1960 ed.).

such use of the tractor on other occasions with Dart's knowledge, we must conclude that Dart's failure to object implied consent. As Merrell testified further, it was customary for him to receive instructions in the form of a "trip settlement sheet" at Dart's terminal. In this instance he received no advance on the profits he would receive from the load to be hauled for Armour, but he often did receive such advance contemporaneously with his instructions. It also appears that the route taken by Merrell from the terminal to go to his home passed by the Armour & Company plant. The accident occurred before he had reached this point on the route. He reported the accident to Dart. Merrell stated that he intended to go directly to his home as was his custom, but he also said that in the course of driving he might have "changed his mind" and stopped at Armour "to see if the trailer had all of the tires on or not." On the daily log sheet, required to be kept by every driver operating under a franchise, Merrell indicated that he was "off duty" the entire working day of August 19.

By virtue of the I. C. C. rules and the provision of the lease quoted above under which nonowned equipment may be operated under a carrier franchise, it is clear, and the parties agree, that because Merrell's use and operation of the tractor was subject to the exclusive control of Dart, the relationship of master and servant existed. Accordingly, if Merrell was acting in the course of his employment at the time of the accident, his negligence may be imputed to Dart.[2] Thus, as a franchised motor carrier Dart cannot evade liability for the negligence of the owner-lessor upon the defense that the owner is an independent contractor. The effect of the rules and the lease is to make the owner-driver an employee of the lessee.[3]

---

[2]Restatement, Agency (2d) § 2, comment *b*.

[3]Duke v. Thomas, 343 S. W. (2d) 656 (St. Louis Ct. of App. Mo.); Kaplan Trucking Co. v. Lavine (6 Cir.) 253 F. (2d) 254; Leotta v. Plessinger, 8 N. Y. (2d) 449, 209 N. Y. S. (2d) 304, 171 N. E. (2d) 454; Mellon Nat. Bank v. Sophie Lines, Inc. (3 Cir.) 289 F. (2d) 473; Van Hook v. Strassberger, 259 S. W. (2d) 399; Stevens v. Deaton Truck Line, Inc. 256 Ala. 229, 54 So. (2d) 464; Marriott v. National Mutual Cas. Co. (10 Cir.) 195 F. (2d) 462; Simon v. McCullough Transfer Co. 155 Ohio St. 104, 98 N. E. (2d) 19. See generally, Sloan, *Liability of Carriers for Inde-*

■  A servant must be acting primarily for the benefit of his master at the time of the tort in order to find that the act was within the course and scope of the servant's employment and thereby imposes vicarious liability for the servant's conduct. If the tort is committed when the servant is in pursuit of activity personal to himself, the master is not liable.[4]

The court ruled that as a matter of law Merrell was engaged in a personal mission. From a review of the testimony most favorable to plaintiff, we are obliged to agree that the evidence is insufficient to support a reasonable inference that Merrell's trip home was a necessary incident of his employment or actuated by an intention to serve Dart.[5] He recorded on his log sheet that he was off duty. His route could not reasonably be regarded otherwise than as incidental to his personal desires and thus unrelated to Dart's business. The only evidence that could arguably support a contrary inference is his testimony that he might have stopped at Armour's to check the trailer tires. At best, this is speculative. In our opinion the trial court was correct in concluding that Merrell was not acting within the course and scope of his employment.[6]

■  Since the record suggests that Merrell may be unable to respond in damages,[7] plaintiff argues by analogy to § 170.54 of the Safety Responsibility Act and its underlying policy that we should accept his second theory—that the effect of the rules of the regulating agencies

_____

*pendent Contractors' Negligent Operation of Leased Motor Trucks*, 43 Iowa L. Rev. 531.

[4]Simpson v. Egler, 166 Minn. 501, 207 N. W. 724; Robinson v. Pence Automobile Co. 140 Minn. 332, 168 N. W. 10; Restatement, Agency (2d) § 235.

[5]Cf. Marcel v. Cudahy Packing Co. 186 Minn. 336, 243 N. W. 265.

[6]Under the law governing vicarious liability for torts, we refrain from considering analogous fact situations presenting the issue of whether employee's injury arose "out of and in the course of employment" under the compensation act because we have previously declared that "compensation acts are sui generis and belong to a fundamentally different field of litigation." Frankle v. Twedt, 234 Minn. 42, 50, 47 N. W. (2d) 482, 488.

[7]Merrell is now a nonresident. He did not appear at trial, but his testimony was submitted by plaintiff by deposition.

and the lease is to render Dart liable for any negligent operation of the tractor.[8] The trial court in rejecting this position stated:

"* * * Plaintiff's contention on this phase of the matter amounts to an assertion that the effect of these regulations and the lease is to impose for the period of the lease an absolute liability upon Dart for any negligence of Merrell in driving the Mack tractor. If plaintiff is correct in this contention, then it makes no difference whether Merrell was on business for Dart or whether he was on a personal mission of his own. At the time of directing the verdict the Court stated that our Supreme Court had not passed upon this question but that in examining cases from other jurisdictions it appeared that liability was not imposed on an absolute basis and appeared to be based on whether at the time the driver-owner was in the scope of his employment for his carrier's business. None of these cases suggested that the regulations superseded the common law as it existed in the particular jurisdiction."

---

[8]Plaintiff also urged before the trial court that defendant Dart was liable under the rule stated in Restatement, Torts, § 428, which states:

"An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

The court declined to consider the application of this rule on the ground that there was no evidence to indicate that a motor truck is a dangerous instrumentality. It should be noted that there are cases recognizing that the operation of motor freight carriers upon the public highways involves unusual risks to the public. See, Hodges v. Johnson (W. D. Va.) 52 F. Supp. 488; Venuto v. Robinson (3 Cir.) 118 F. (2d) 679. In any event, plaintiff was not prejudiced by the trial court's refusal to consider the effect of this rule since its application requires that the activity causing the harm be actually carried on under the public franchise at the time of the alleged negligence. See, Venuto v. Robinson, *supra*; War Emergency Co-op. Assn. v. Widenhouse (4 Cir.) 169 F. (2d) 403; Werner Transp. Co. v. Dealer's Transport Co. (D. Minn.) 102 F. Supp. 670; Barry v. Keeler, 322 Mass. 114, 76 N. E. (2d) 158. Certainly, the use of a motor truck on a personal mission does not require or involve its operation pursuant to a franchise.

In our opinion plaintiff's argument ignores the significance of the facts that neither the rules nor the lease prohibits the carrier from permitting a noncommercial use of the tractor, and that its use at the time of the accident was not incident to Dart's business of transporting goods under the franchise granted by public authority. The most that can be said is that Dart gave Merrell permission to use the tractor for a personal mission. No claim is or could be made that Dart failed to use reasonable care by entrusting the vehicle to Merrell. The only basis remaining upon which Merrell's negligence could be imputed to Dart is that he was operating the vehicle with Dart's consent.

From our examination of the I. C. C. rules, the statute authorizing their promulgation, and the cases dealing with the question, we find no basis upon which to conclude that the rule requiring the lease provision in question was intended to subject the carrier to liability for negligent operation of the nonowned equipment permissibly used for any purpose, thereby superseding the substantive law governing vicarious tort liability.[9]

Unlike § 170.54 of our Safety Responsibility Act, which subjects the owner of the vehicle to liability simply upon proof that the vehicle is operated with his consent, the rules and the lease provisions serve only to make the lessor-owner an employee of the carrier-lessee and foreclose giving effect to any agreement which is intended to create the relationship of carrier and independent contractor. Had the Safety Responsibility Act included in the definition of an owner one who was granted exclusive possession and control of a vehicle under a lease,[10] Dart's permission to use the tractor would clearly support liability for Merrell's negligence. However much we may dislike the re-

---

[9]See footnote 3, *supra.*

[10]Minn. St. 170.21, subd. 9, provides: " 'Owner' means a person who holds the legal title of a motor vehicle, or in the event a motor vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purposes of this chapter."

sult, the problem of broadening the provisions of that act to cover the facts presented is for the legislature.

We conclude in accord with the trial court that the rules and lease provisions under the circumstances of this case impose liability on the carrier only when the tractor is being operated in the furtherance of the carrier's business.

Affirmed.