Jacob A. SCHINDELE, Respondent,

v.

Kathleen ULRICH, as Special Administratrix of the Estate of Kenneth Forster, Deceased, et al., Defendants.

SAMMONS TRUCKING and Myron Sammons, Individually and d. b. a. Sammons Trucking, third party plaintiffs, Appellants,

v.

SWANSON POULTRY AND EGG COMPANY OF ALEXANDRIA, Minnesota, third party defendant, Respondent.

No. 47613.

Supreme Court of Minnesota.

May 12, 1978.

*Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

Robert Gislason and James Martin, Edina, for appellants.

Roger Nierengarten, Michael Donohue, St. Cloud, for Jacob A. Schindele.

Jardine, Logan & O'Brien and Charles Gillen, St. Paul, for Swanson Poultry and Egg Co. of Alexandria.

PETERSON, Justice.

Plaintiff, Jacob A. Schindele, sustained personal injuries when a truck in which he was a passenger overturned while descending a mountain road in the state of Washington. The trial court adopted a jury's special verdict with respect to the driver's causal negligence and assessment of damages. The trial court made independent determinations of law with respect to the liability of defendant Myron Sammons, individually and doing business as Sammons Trucking, a lessee of the vehicle. Sammons Trucking appeals from the amended judgment entered against it and from the order denying its post-trial motion for amended findings of fact, conclusions of law, and order for judgment. We affirm.

Many of the essential facts are uncontroverted. Plaintiff and Kenneth Forster, who died in the accident, were employed as truckdrivers by Swanson Poultry and Egg Co. (Swanson), a Minnesota corporation. Swanson owned the tractor and trailer involved in this case and leased it to Sammons Trucking, an authorized carrier under the Interstate Commerce Act, which did business from an office in Montana. As a part of the lease agreement, Sammons Trucking directed the operation of the truck, and revenues from shippers were divided between Sammons Trucking and Swanson.

On the day of the accident, September 7, 1966, plaintiff and Forster were driving east on State Highway No. 3 near Pomeroy, Washington, carrying a heavy load of plywood panels. At about 11 a. m., Forster was driving and plaintiff was asleep in the back of the cab as they approached an area in the highway known as Alpowa Grade. Here the highway climbs to a summit and then descends at a 6-percent grade for a distance of approximately 5.2 miles.

Burton Davis, a farmer who lived in the area, was also traveling east near Alpowa Grade that morning. Davis testified that he passed the truck on the downward slope of Alpowa Grade approximately 1.8 miles east of the summit. A short time later he noticed in his rearview mirror that the truck he had just passed was approaching him at a high rate of speed. Davis, who was familiar with the curves in the high-

way, increased his speed to 70 miles per hour in an attempt to reach a straight stretch in the highway where the truck could pass. The truck, however, began sounding its horn, so Davis moved toward the shoulder and the truck passed at a speed Davis estimated as 80 to 90 miles per hour. Davis testified that as the truck passed him it sounded as though it was not in gear. He based his conclusion upon the lack of engine noise and his observation that the truck was heavily loaded and was descending the hill at high speed.

After the truck passed him, Davis increased his speed, but the truck continued to pull farther ahead. Davis observed the truck's brake lights flashing intermittently and then saw a puff of blue smoke from the rear of the truck. The trailer immediately overturned, pulling the tractor off the road, through the guardrail, and into the ditch. Davis estimated the truck's speed at that time as 120 miles per hour. The trailer overturned approximately 4.8 miles from the summit and approximately 0.4 mile from the bottom of the grade.

Plaintiff testified that on the morning of the accident Forster began driving about 9 a. m., and plaintiff went into the sleeper compartment and slept. The next thing plaintiff remembered was being awakened by the sounds of Forster screaming his name and the buzzer indicating low air pressure in the truck's airbrakes. Plaintiff jumped from the sleeper compartment into the cab of the truck on the passenger's side and saw that the speedometer read 80 miles per hour, which was the highest speed the speedometer would register. Plaintiff recognized that they were on a grade but did not know exactly where. He struck the truck's emergency shut-off switch and immediately found himself rolling around inside the cab. He then remembered getting up and seeing Davis standing nearby, who told him that Forster was dead.

A highway patrolman who was called to the scene examined the tractor and overturned trailer and found that the gearshift was in neutral, that the condition of the brake linings and drums was good, and that the wheels were not locked. He also testified that at the time of the accident the weather and the road-surface conditions in the area were good and that there were highway signs at the summit of Alpowa Grade stating: "Steep down grade, trucks use lower gears."

As a result of the accident, plaintiff suffered a severe injury to his right hand, aggravation of a previous injury to his left knee, and various cuts and bruises. After a period of hospitalization, plaintiff returned to Minnesota and received worker's compensation from Swanson's compensation insurer. In 1972, plaintiff brought this negligence action against the administratrix of Forster's estate and Sammons Trucking. Sammons Trucking brought a third-party action against Swanson, seeking indemnification.

The jury found that Forster was negligent, that plaintiff was not negligent, that Forster's negligence was the direct cause of the accident, and that plaintiff's damages were $227,000. The trial court found and concluded that under the terms of the lease agreement Forster's negligence was to be imputed to Sammons Trucking, that plaintiff's action was not barred by the Minnesota workers' compensation statutes, and that Swanson was not liable to Sammons Trucking for contribution or indemnification. Four issues are presented on this appeal by Sammons.

█ 1. The first issue is whether the evidence is sufficient to sustain the jury's verdict that Forster was negligent and that his negligence was the proximate cause of the accident. Viewing the evidence in the light most favorable to the verdict, we hold that it was. It is undisputed that Forster was warned by highway signs of the need to use lower gears in descending the Alpowa Grade. There was evidence that the truck's transmission went through the neutral position between gear changes, and there was no evidence of mechanical problems with the truck. There was testimony from Davis, the sole eyewitness, that the truck was in neutral when it passed him at high speed, and from the investigating pa-

trolman that the gearshift was in neutral after the accident. In light of the absence of evidence reasonably supporting any other theory of the accident, these facts were sufficient to allow a jury to find that Forster was negligent in failing to shift to a lower gear before the truck's increased speed prevented the completion of a gear change, thus leaving the transmission caught in neutral.

■ The evidence is also sufficient to support the jury's finding that Forster's negligence was the proximate cause of the accident. Sammons Trucking argues that but for plaintiff's use of the emergency shut-off switch the truck might have reached the bottom of the grade and safely stopped and therefore that plaintiff's act was an efficient intervening cause of the accident. In our view, however, the evidence is sufficient to sustain the jury's finding that Forster's negligence was the sole cause of the accident. Since the jury found that Forster's negligence created the emergency situation, plaintiff's response in using the emergency shut-off switch must be viewed as a natural and foreseeable consequence of that negligence. Moreover, considering the truck's high speed at the time of the accident, the assertion of Sammons Trucking that the truck might otherwise have coasted to a safe stop at the bottom of the grade is unwarranted speculation.

■ 2. The key issue, however, is whether under the terms of the lease agreement Sammons Trucking is vicariously liable for the injury to plaintiff caused by Forster's negligence. The lease agreement was made by filling in the blanks on a printed form that apparently is commonly used in the trucking industry. The critical provision of the agreement provides:

1. The assumption of responsibility by the lessee is reiterated in more emphatic terms in another portion of the agreement which provides: " * * * Notwithstanding any provision contained herein which might be construed otherwise, the lessee shall have the exclusive possession, control and use of the said equipment when operated by the lessee; and *during the period the vehicle is operated in its service, lessee completely assumes full respon-*

"It is understood that the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier LESSEE [Sammons Trucking] and that the LESSEE assumes full responsibility in respect to the equipment it is operating, to the public, the shippers, and the INTERSTATE COMMERCE COMMISSION." [1]

This provision was included in the lease pursuant to Interstate Commerce Commission (ICC) regulations,[2] which require ICC carriers which use leased equipment and borrowed drivers to do so only under agreements in which they assume full responsibility for the equipment and drivers.

In *Gackstetter v. Dart Transit Co.*, 269 Minn. 146, 130 N.W.2d 326 (1964), we held that a lease provision essentially identical to that quoted above required imputation of the truckdriver's negligence to the ICC carrier-lessee if the driver was acting in the course of his employment at the time of the accident. In the present case, it is undisputed that Forster was acting in the course of his employment at the time of the accident.

Sammons Trucking argues that it should not be liable for plaintiff's injury because plaintiff was an employee of the owner-lessor of the truck. This argument was rejected in *Proctor v. Colonial Refrigerated Transp. Inc.*, 494 F.2d 89 (4 Cir. 1974). There the court held that under a similar, if not identical, lease agreement the carrier-lessee was liable to a codriver-passenger for the driver's negligence. Like the court in Proctor, we think the lessee's assumption of "full responsibility in respect to the equipment it is operating" requires it to assume liability to a codriver for injury caused by the driver's negligence.

*sibility to the public,* the shippers, and to all state and federal regulatory bodies or authorities." (Italics supplied.)

2. 49 CFR §§ 1057.1 to 1057.6 (1976). These regulations were promulgated by ICC to correct widespread abuses incident to the use of leased equipment by carriers. See, *American Trucking Assns. v. United States*, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953).

■ Since Sammons Trucking bears full responsibility for Forster's negligence, it should not be permitted to shift the loss back to Swanson by claiming contribution or indemnification. Thus, the trial court properly dismissed the third-party action by Sammons Trucking against Swanson.

3. Sammons Trucking, a Montana-based business, contends that since plaintiff has received worker's compensation from the insurer of Swanson, a Minnesota-based business, his subsequent action for civil damages against Sammons Trucking is barred by the "election of remedies" provision of Minn.St. 176.061, subd. 1, which provides:

> "Where an injury or death for which compensation is payable occurs under circumstances which create a legal liability for damages on the part of a party other than the employer and at the time of such injury or death that party was insured or self-insured *in accordance with this chapter*, the employee, in case of injury, or his dependents, in case of death, may proceed either at law against that party to recover damages or against the employer for compensation, but not against both." (Italics supplied.)

A close reading of the statute demonstrates that the conditions necessary to bar a subsequent damages action have not been met.

■ The words, "in accordance with this chapter," are words of limitation requiring a limited reading of the election of remedies provision. This is a policy decision within the power of the legislature to make. For the action to be barred by the statute, the "party other than the employer"—Sammons Trucking—must be "insured or self-insured in accordance with this chapter." Sammons Trucking cannot meet this requirement by carrying workers' compensation insurance under Montana law because under the statute, as properly construed by the trial court, workers' compensation insurance purchased in another state does not satisfy the requirement of insurance "in accordance with this chapter."

■ We find persuasive support in the Court of Appeals' interpretation of our stat-ute in *Chenette v. Trustees of Iowa College, Grinnell, Iowa*, 431 F.2d 49 (8 Cir. 1970). There, an employee of the Minnesota Orchestra was injured on the premises of Grinnell College in Iowa in the course of his employment and received compensation from his Minnesota employer. The employee brought an action against Grinnell College for damages and the Court of Appeals, having the case under diversity jurisdiction, held that the subsequent action for damages was not barred by § 176.061, subd. 1, because Grinnell College did not meet the requirement of being insured or self-insured in accordance with the Minnesota workers' compensation statute.

■ 4. The final issue raised concerns the jury's assessment of plaintiff's damages as \$227,000. Sammons Trucking argues that the damages are excessive as a matter of law. While the amount of damages is large relative to the severity of plaintiff's injuries, the assessment of damages is the peculiar province of the jury. The trial court upheld the damages verdict because of plaintiff's age (he was 27 years old at the time of the accident), the prolonged pain he suffered, and the impairment of his earning capacity. We do not find sufficient grounds to conclude that the damages found by the jury are excessive as a matter of law.

Affirmed.

TODD, J., took no part in the consideration or decision of this case.

## UPON REHEARING

Upon petition for rehearing Sammons asks our further consideration of two arguments raised in its initial brief. First, Sammons argues that our decision in *Lunderberg v. Bierman*, 241 Minn. 349, 63 N.W.2d 355 (1954), requires the conclusion that in this case Swanson Poultry should indemnify Sammons for plaintiff's damages. In *Lunderberg v. Bierman,* Bierman brought her automobile to a retail dealer for a check-up. As a part of the check-up, two of the dealer's employees took the automobile for a

road test, during which the driver negligently caused an accident which injured the other employee. The injured employee brought suit against Bierman for liability imposed upon automobile owners by statute. We held that since Bierman was without personal fault, she was entitled to indemnity from the negligent driver's employer. Sammons argues that it, like Bierman, is without personal negligence and therefore should be indemnified by the driver's employer, Swanson Poultry.

We agree that in this case Sammons is without personal fault, but the analogy to the *Lunderberg* case goes no farther. In *Lunderberg*, Bierman did not agree to assume responsibility for accidents which occurred during the road test; liability was imputed to her by operation of a statute. In this case liability was imputed to Sammons because it explicitly agreed with Swanson Poultry, the employer of the driver and the lessor of the truck, to assume "full responsibility" for the truck. As an ICC carrier, Sammons knew that it would be required by ICC regulations to assume that responsibility when it elected to lease rather than purchase the trucks it used in its business. Sammons cannot now claim a right of indemnity to shift back to Swanson Poultry the responsibilities it explicitly agreed with Swanson Poultry to assume.

■ Second, Sammons Trucking argues that Minn.St. 176.061, as now construed, constitutes an unreasonable burden on interstate commerce, a denial of equal protection, and a denial of the privileges and immunities accorded citizens of other states, all in violation of the Federal constitution. The nub of Sammons' argument invoking these constitutional protections is that our interpretation of § 176.061 leaves Sammons, a Montana company, exposed to the "threat of common law liability" while at the same time conferring the "benefits" of limited tort liability on those insured in accordance with the Minnesota workers' compensation act. We would point out, however, that this difference in treatment is not based on Sammons' Montana residency. It is based on Sammons' choice not to purchase workers' compensation insurance which provided coverage in Minnesota. Since Sammons chose not to satisfy the conditions of the Minnesota workers' compensation statute, it is not entitled to the benefits of the statute, such as limited liability. The statute, as we have construed it, imposes no obligations on Sammons which are any different from those imposed on Minnesota companies. Thus the statute does not contravene either the privileges and immunities clause or the equal protection guarantee of the Fourteenth Amendment. See *Middleton v. Texas Power & Light Co.,* 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527 (1919). If the statute as we construe it has any effect on interstate commerce, it is no more than an incidental or indirect effect, which the United States Supreme Court has held will not defeat the application of a state's workers' compensation scheme to interstate carriers. *Boston & M. R. R. v. Armburg,* 285 U.S. 234, 52 S.Ct. 336, 76 L.Ed. 729 (1932).

The petition for rehearing is denied.

TODD, J., took no part in the consideration or decision of this case.