**Kenneth W. MENSING, et al., Plaintiffs,**

**v.**

**ROCHESTER CHEESE EXPRESS, INC., Appellant,**

**Robert Donald Robinson, Jr., Respondent.**

**No. C6–87–2522.**

Court of Appeals of Minnesota.

May 3, 1988.

Peter C. Sandberg Dunlap, Keith, Finseth, Berndt & Sandberg, P.A., Rochester, for appellant.

Steven S. Fuller, O'Brien, Ehrick, Wolf, Deaner & Downing, Rochester, for respondent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and FLEMING *, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from a grant of summary judgment on the issue of primary liability for injuries incurred in an accident under the terms of a contractor operating agreement. The facts are not disputed. The issues are ones of law. We affirm.

## FACTS

On November 27, 1979, appellant Rochester Cheese Express, Inc., and respondent Robert Donald Robinson, Jr., entered into a contractor operating agreement. Under the terms of the agreement, Robinson is required to provide tractors and trailers, together with drivers and all necessary labor, to transport, load and unload Cheese Express' products.

Paragraph seven of the agreement, which is at issue in this appeal, provides:

7. [Cheese Express] acknowledges that it is legally obligated to maintain public liability, property damage and cargo insurance coverage for the protection of the public pursuant to Interstate Commerce Commission regulations under 49 U.S.C. 10927, however, [Robinson] shall indemnify and hold harmless [Cheese Express] for the first $500.00 of any loss or damage to third persons or property, which results from the negligence of [Robinson], its agents or employees.

[Robinson] agrees to carry bobtail and deadhead insurance coverage with respect to public liability and property damage in the limits of $100,000.00 for any person, $300,000.00 for any accident and $50,000.00 for property damage in any accident as concerns all Equipment hereunder *when used not in performance of a trip under this Agreement* and agrees to furnish evidence of such coverage to [Cheese Express] and to arrange for [Cheese Express] to be named as additional insured under such policy.

(Emphasis added.) Driving a tractor without a trailer is called "bobtailing." Driving a tractor with an empty trailer is called "deadheading."

This agreement was still in effect on April 10, 1984, when Robinson was contacted by Cheese Express and directed to drive to Zumbrota, Minnesota to pick up a load of cheese from Mid–America Cheese Company. When Robinson's driver arrived at Mid–America he was told his truck could not be loaded immediately because the loading crew was eating lunch. The driver unhitched the trailer at the loading dock and drove the tractor "bobtail" into Zumbrota for lunch, where he struck a car driven by Kenneth W. Mensing. After the accident, the driver returned to Mid–America, reattached the trailer and delivered the load for Cheese Express.

Mensing brought this lawsuit naming both Robinson and Cheese Express as defendants. Robinson moved for summary judgment, asking the trial court to find Cheese Express primarily liable under the terms of the agreement.

On April 16, 1987 the trial court issued an order granting summary judgment in favor of Robinson. In addressing the issue of whether the accident occurred during a "trip" within the meaning of the agreement, the trial court found the agreement did not define trip, and therefore used a "scope of employment" analysis to determine if the accident occurred during a trip. The trial court concluded the undisputed facts indicated the accident occurred during

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

the course of a "trip," and therefore Cheese Express was primarily liable under the agreement.

## ISSUE

Did the trial court properly determine the accident occurred during the course of a "trip"?

## ANALYSIS

On appeal from summary judgment, our function is to determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 855 (Minn.1986). Here, the parties stipulated there are no material issues of fact. Thus, our review is limited to the trial court's application of the law.

Cheese Express contends the trial court erred in two respects in construing the agreement:

    1. The trial court failed to follow the clear language of the contract; and

    2. The trial court improperly construed the term "trip" within the context of "scope of employment" considerations.

■ Cheese Express argues the language in paragraph seven makes Robinson liable whenever he is "bobtailing" or "deadheading," *or* whenever the equipment is not used in performance of a trip. The trial court's interpretation differed:

> [T]he plain meaning of [the] language contained in paragraph seven of the agreement makes Robinson primarily liable if two conditions are met: (1) the tractor is being driven deadhead or bobtail, *and* (2) the incident occurs when the equipment is not being used for a "trip" within the meaning of the agreement.

(Emphasis in original.) Thus, any time the tractor is operating within the context of a "trip," Cheese Express is liable.

We adopt the trial court's interpretation of paragraph seven rather than that of Cheese Express, which would make Cheese Express liable only when the tractor was pulling a *loaded* trailer. The trial court's

interpretation is consistent with federal and state statutes and regulations which require the carrier to maintain insurance coverage for the protection of the public. *See* 49 U.S.C. § 10927; 49 C.F.R. § 1057.12(j)(1); Minn.Stat. § 221.141 (1984); Minn.R. 7800.2600 (1983).

■ Cheese Express also contends the trial court erred in utilizing a "scope of employment" analysis when the parties expressly intended to create an independent contractor relationship rather than an employment relationship.

In *Gackstetter v. Dart Transit Co.*, 269 Minn. 146, 130 N.W.2d 326 (1964), the Minnesota Supreme Court found a lease provision required by rules of the Interstate Commerce Commission, which states

> *"the leased equipment * * * is in the exclusive possession, control, and use of the authorized carrier, * * * and that the [carrier] assumes full responsibility in respect to the equipment it is operating, to the public * * * "*

created an employment relationship, even though the parties intended an independent contractor relationship, because the contractor's use of the tractor was subject to the carrier's exclusive control. *Id.* at 147, 149, 130 N.W.2d at 327, 328 (emphasis in original).

The lease at issue here contains a required provision like the one in *Gackstetter* which grants Cheese Express exclusive possession, control and use of the equipment for the duration of the agreement. *See* 49 C.F.R. § 1057.12(c)(1). Under *Gackstetter*, this required provision creates an employment relationship between Cheese Express and Robinson, even though they intended an independent contractor relationship. Thus, the trial court properly utilized a "scope of employment" analysis to determine if the accident occurred during the course of a trip.

■ There is no hard and fast rule to resolve the scope of employment inquiry; rather, each case must be decided on its own individual facts. *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 15 (Minn. 1979). Here, the driver went to Mid–Amer-

ica as directed. His trailer could not be loaded immediately because the loading crew was eating lunch. The driver decided to eat lunch while waiting for his load. The accident occurred on his way to lunch. Afterward, the driver went back to Mid-America to pick up the loaded trailer and delivered it for Cheese Express.

An employee must be acting primarily for the benefit of the employer in order to find the act was within the scope of employment. *Gackstetter*, 269 Minn. at 150, 130 N.W.2d at 329. However, an employee does not cease to be acting within the scope of employment because of an incidental personal act if the main purpose is still to carry on the business of the employer. *Edgewater*, 277 N.W.2d at 16.

> Such acts as are necessary to the life, comfort, and convenience of the [employee] while at work, though strictly personal * * * and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment.

*Laurie v. Mueller*, 248 Minn. 1, 6, 78 N.W. 2d 434, 438 (1956) (quoting *Adams v. American President Lines*, 23 Cal.2d 681, 146 P.2d 1 (1944)). Necessary incidents of life, such as eating, are contemplated to be within the scope of employment. *Id.* at 9, 78 N.W.2d at 439. *Laurie* is cited with approval in *Edgewater*.

We find the driver was acting primarily for the benefit of Cheese Express while waiting for his trailer to be loaded. His trip into Zumbrota for lunch did not remove him from the scope of employment, as eating lunch was incidental to his service to Cheese Express. The trial court properly determined the accident occurred during the course of a "trip."

## DECISION

Affirmed.