ACCEPTANCE INSURANCE
COMPANY, Appellant,

v.

Juanita Carol CANTER as trustee for the heirs of Brian Canter, deceased; Clarence Lyle Caldwell; Allstate Leasing Corporation; Britton Motor Service, Inc., and The Home Insurance Company, Appellees.

No. 90–5461.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1991.

Decided March 6, 1991.

Daniel A. Haws, St. Paul, Minn., for appellant.

Sharon Van Dyck, Minneapolis, Minn., and James A. O'Neal, Bloomington, Minn., for appellees.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Acceptance Insurance Company appeals the district court's order granting summary judgment for Juanita Canter on the issue of the applicability of Acceptance's coverage of Clarence Caldwell to an automobile accident between Caldwell and Brian Canter. We affirm the district court's order.

## BACKGROUND

Clarence Caldwell is an independent trucker who owned his own tractor. Caldwell entered into a lease agreement with Britton Motor Service, Inc. The agreement authorized Caldwell to transport freight under Britton's Interstate Commerce Commission permit with Britton promising to provide freight for Caldwell to haul in Britton-supplied trailers. Britton recognized its legal obligation to maintain public liability insurance pursuant to federal regulations. In exchange, Caldwell promised to lease his tractor to Britton for its exclusive possession, control, and use for the duration of the agreement. Caldwell also agreed to secure "bobtail" insurance.[1]

In compliance with their agreement, both Britton and Caldwell obtained insurance. Britton secured coverage from The Home Insurance Company, while Acceptance Insurance Company covered Caldwell. The policy issued by Acceptance to Caldwell limited its coverage, in pertinent part, as follows:

The insurance does not apply:

(a) while the automobile is used to carry property in any business;

---

1. A trucking industry term, "bobtail" refers to operating a tractor without a trailer.

(b) while the automobile is being used in the business of any person or organization to whom the automobile is rented.

On November 4, 1988, a truck with a trailer attached, driven by Caldwell, collided with an automobile driven by Brian Canter. Mr. Canter was killed in the collision. His wife, Juanita Canter, filed a wrongful death action in federal district court against Caldwell, Britton, and Allstate Leasing Company. The wrongful death action is currently pending before the district court.

## DISCUSSION

Before the wrongful death action can proceed, we must decide whether Caldwell's personal insurance applies to the accident, or whether the only applicable insurance coverage is that of Britton, the trucking company which leased both Caldwell's services and his tractor. It is undisputed that under the "logo liability rule," Britton is liable for Caldwell's negligence because Caldwell was driving under Britton's logo with its consent when the accident occurred. *See, e.g., Grinnell Mutual Reinsurance Co. v. Empire Fire & Marine Ins. Co.,* 722 F.2d 1400, 1404 (8th Cir.1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2155, 80 L.Ed.2d 540 (1984). Although Britton's insurance coverage does apply, it may be subservient to Caldwell's. Thus, if Caldwell's personal insurance also applies, we must further decide which insurance is primary, Britton's or Caldwell's. To determine whether Acceptance's coverage applies to the accident, we must decide whether Caldwell was "in the business of" Britton at the time of the accident.

### I.

■ Both parties concede that the substantive law of Minnesota controls this diversity action. Minnesota has not explicitly addressed the meaning of "in the business of" in the context of a liability policy issued to a trucker operating under a long-term lease agreement. Nonetheless, Minnesota case law does provide some instruction.

In *Gackstetter v. Dart Transit Co.,* 130 N.W.2d 326, 269 Minn. 146 (1964), the Supreme Court of Minnesota ruled that a trucker was not acting within the course and scope of his employment when he had recorded on his log sheet that he was off duty and was traveling from his company's terminal to his home. On his route home, the trucker in *Gackstetter* was to pass the plant where he was to return the next day to pick up a trailer. The accident occurred before the trucker reached the plant en route to his home, but the record was clear that he was to pick up the trailer the next day and not on his way home.

In the case before us, Caldwell had returned to Britton's St. Paul terminal during either the evening of Wednesday, November 2, 1988, or the morning of Thursday, November 3, 1988. In either event, Caldwell waited at Britton's terminal for a load to deliver until approximately noon on Friday, November 4. Because no freight was available, Caldwell decided to drive to his home in Wisconsin. When he departed, Caldwell had not been given a shipment nor any directions regarding where to pick up a shipment. Instead, Britton instructed Caldwell to call the terminal the following Monday morning to see if any freight was available for shipment. Because Caldwell was not under dispatch when he left the terminal, Britton did not pay or reimburse him for the mileage to his home.

The accident occurred on this trip home. During the trip, Caldwell pulled an empty trailer. Britton's dispatcher testified that he allowed Caldwell to pull the trailer because Britton customarily allows drivers who live outside the Twin Cities area to pull an empty trailer on their way home to provide the tractor with weight and stability. The record contains no indication that Caldwell pulled the empty trailer with the understanding that on Monday morning he should proceed to a designation where the empty trailer would be loaded or exchanged for an already loaded trailer. The record does indicate, however, that drivers could be dispatched directly from their homes without having to return to the St. Paul terminal first. Whether Britton was to dispatch Caldwell in this fashion is not

known, since at the time of the accident Britton did not have freight for Caldwell to ship and had given him no instructions other than to call in on Monday to ascertain whether freight was available.

Based on these facts and the Supreme Court of Minnesota's ruling in *Gackstetter*, we find that Caldwell was not "in the business of" Britton when the accident occurred. When Caldwell left Britton's St. Paul terminal, he did not depart with any instructions to proceed to a particular destination. Rather, he was driving home for the weekend and was instructed to call Britton on Monday to see whether work was available. Thus, when Caldwell left Britton's terminal he was off-duty and free to spend the weekend as he wished. Consequently, the trial court correctly found that the Acceptance insurance policy covered Caldwell for the accident on November 4, 1988.

## II.

■ After reaching this conclusion, the district court further concluded that the Acceptance policy is primary. We agree.

Under Minnesota law, "the insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the most incidental to the basic purpose of its insuring intent will be liable last." *Integrity Mutual Ins. Co. v. State Automobile & Casualty Underwriters Ins. Co.*, 239 N.W.2d 445, 447, 307 Minn. 173, 175, 176 (1976). To make this "closest to the risk" analysis, the Supreme Court of Minnesota instructs us to allocate "respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks and the primary function of each policy." *Interstate Fire & Casualty Co. v. Auto–Owners Ins. Co.*, 433 N.W.2d 82, 86 (Minn.1988) (citing *Integrity*, 239 N.W.2d at 446, 307 Minn. at 175). Here, Caldwell obtained liability insurance which, by its own terms, applied when Caldwell was not in the business of Britton. The accident underlying this case occurred during such a situation. Therefore, the policy

of Acceptance was closest to the risk and is primary to that of Britton's insurer.

For the reasons discussed, we affirm the judgment of the district court.