Daniel OLDAKOWSKI,
et al., Appellants,

v.

M.P. BARRETT TRUCKING,
INC., Respondent.

No. A03–1557.

Court of Appeals of Minnesota.

June 8, 2004.

Kevin S. Carpenter, Carpenter Injury Law Office, St. Cloud, MN, for appellants.

Frank J. Rajkowski, Rajkowski Hansmeier Ltd., St. Cloud, MN, for respondent.

Considered and decided by MINGE, Presiding Judge, SHUMAKER, Judge, and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

In proceedings on their claims arising out of the owner/operator's acts in unloading and stacking bales of hay the owner/operator had hauled, appellants contend the district court erroneously limited the liability of the motor carrier who leased the trucking equipment. The court granted summary judgment in favor of the carrier, concluding that the hauling contract extended only to the delivery of the bales, and that the stacking, as well as the unloading, were done by the owner/operator as a personal favor to the customers. Because, as appellants assert, there are genuine issues of material fact as to the scope of the hauling contract, we reverse and remand for trial.

## FACTS

Appellants are Daniel Oldakowski and his wife, Deanna. Daniel and his brother, Gordon Oldakowski (the Oldakowskis), hired Eric Scholl to haul a load of baled hay to the Oldakowski farm. The Oldakowskis had a longstanding relationship with Scholl, who rented a house and a small farm from them. Scholl owned and operated a freight truck and had a leasing contract with respondent M.P. Barrett Trucking, Inc. (Barrett), a company co-owned by Scholl's father.

On July 19, 1999, Scholl hauled over 60 large rectangular bales of hay to the Oldakowski farm. The farmer selling the bales loaded them onto Scholl's trailer bed without any help from Scholl or Gordon Oldakowski, who accompanied Scholl on the trip. On the return trip to the Oldakowski farm, the two discussed how the bales should be unloaded. No such conversation took place between Dan Oldakowski, his brother, Scholl, or anyone from Barrett prior to the truck's arrival at the farm. The Oldakowskis had recently purchased a skid-steer loader and planned to use that to unload the bales from the trailer. Because the Oldakowskis were not familiar with the loader, they asked Scholl to drive it and unload the bales.

Although Gordon Oldakowski testified at his deposition that he did not expect Scholl would unload the bales, he admitted that he asked him to do so without any thought as to what, if any, the charge would be. Gordon also admitted that because of their

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

long history with Scholl, there were occasions in the past when Scholl had done work for them without expecting payment.

Scholl agreed to unload the bales. The Oldakowskis directed Scholl to stack the bales five high and indicated where to stack them. During the unloading and stacking process, several bales fell onto Dan Oldakowski, injuring his right leg, left hip, left wrist, and face.

Appellants initiated a lawsuit against respondent Barrett, alleging that it was vicariously responsible for Scholl's negligence in stacking the bales because Scholl was acting as Barrett's employee at the time of the accident. Barrett denied that Scholl was acting on its behalf at the time and alleged that during the unloading process Scholl was under the sole direction of the Oldakowskis.

After discovery, Barrett moved for summary judgment, arguing that it was not liable for injuries that did not result from the operation of the leased equipment. Barrett further argued that because Scholl was an independent contractor, it was not liable for his actions. Appellants opposed this motion and moved for partial summary judgment, asking the district court to find that, as a matter of law, Barrett was vicariously liable for Scholl's actions.

The district court denied appellants' motion for partial summary judgment and granted Barrett's motion, dismissing appellants' claims with prejudice. The court reasoned that the Oldakowskis contracted with Scholl to haul the bales from the seller's farm to the Oldakowski farm, and that the contract was fulfilled when the trailer arrived at the Oldakowski farm. Under case law and the leasing contract between Barrett and Scholl, the court determined that Barrett would be liable for the injury only if it had occurred when the tractor-trailer was being used in furtherance of Barrett's business. And because

the court determined that unloading was a personal favor that Scholl performed for the Oldakowskis, it was outside the scope of his contract with Barrett, and Barrett was not liable to appellants for any negligence on Scholl's part. The court also found that even if unloading the trailer was part of the business with Barrett, it was Scholl's personal favor to stack them as instructed by the Oldakowskis.

## ISSUE

Did the district court err in granting summary judgment to Barrett?

## ANALYSIS

■ When reviewing a summary judgment, this court asks whether there are any genuine issues of material fact and whether the district court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). We must view the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

The district court granted summary judgment for Barrett because it found that, as a matter of law, Barrett could not be vicariously liable for Scholl's actions under any theory advanced by appellants. The court determined that Scholl agreed to unload and stack the bales as a personal favor to the Oldakowskis, rather than in the course of his business with Barrett, and that Barrett's liability ended with the delivery of the bales to the Oldakowski farm.

■ Whether Scholl was Barrett's employee or an independent contractor, the leasing agreement between them created a master/servant relationship and Barrett is, in some cases, liable for Scholl's actions. *See Gackstetter v. Dart Transit Co.,* 269 Minn. 146, 149, 130 N.W.2d 326, 328 (1964).

If Scholl was acting within the scope of his employment with Barrett, his alleged negligence may be imputed to Barrett. *See id.* This court has determined that there is "no hard and fast rule to resolve the scope of employment inquiry; rather, each case must be decided on its own individual facts." *Mensing v. Rochester Cheese Express, Inc.*, 423 N.W.2d 92, 94 (Minn.App. 1988). To find that the employee's actions were within the scope of employment, the employee must have been acting primarily for the benefit of the employer. *Id.* at 95. If, at the time of the alleged negligence, Scholl was acting in pursuit of a personal interest, Barrett is not liable. *See Gackstetter*, 269 Minn. at 150, 130 N.W.2d at 329.

Barrett argues that the act of unloading the bales did not involve the operation of the leased equipment, and it may only be liable for injuries incurred during the use of that equipment. Barrett argues that because Scholl was not actually operating the tractor-trailer at the time of the alleged negligence, vicarious liability cannot attach.

Clearly, had Scholl been driving the tractor-trailer at the time of the alleged negligence, Barrett would be liable for Scholl's actions under the leasing agreement. *See id.* at 149–50, 130 N.W.2d at 328–29; *Mensing*, 423 N.W.2d at 94. But there is nothing in these cases or others stating that the carrier's liability, if not specifically restricted by its contract with the operator, must be limited to negligence arising out of the actual operation of the leased equipment. The leasing contract between Scholl and Barrett limits liability to equipment uses in the furtherance of Barrett's business, but it does not confine liability to the actual operation of the equipment. Further, the contract provides for the fact that Scholl may at times perform loading or unloading services as part of a hauling agreement with a shipper. If the act of unloading is at times part of the agreement between a shipper and Barrett, then Barrett's liability should extend to that action as well as the direct operation of the leased equipment.

The leasing contract between Barrett and Scholl gives Barrett exclusive possession, control, and use of Scholl's equipment for the duration of the contract. Although the contract specifies that Scholl is not Barrett's agent and does not have authority to bind Barrett, it also specifies that it is Scholl's responsibility to determine the means and method of performing each hauling service and to complete that service diligently and on time. Completion of the service may include "loading and unloading at times requested by the shipper." This evidence suggests that the parties contemplated that Scholl would have the authority to unload the bales at the request of the customer, the Oldakowskis, while still within the scope of his employment with Barrett. This evidence is also sufficient to permit the finding that stacking was merely part of the unloading of bales.

It is clear from the record that the initial hauling agreement between Scholl and the Oldakowskis did not include loading and unloading the bales from the trailer. Both Dan and Gordon Oldakowski admitted in their depositions that prior to Scholl's arrival, they assumed they would unload the bales themselves, and it would not be part of the hauling agreement with Barrett. Scholl also stated that he had not thought he would be unloading the bales until Gordon Oldakowski asked him to do so.

Thus, if Scholl unloaded the bales as part of the hauling agreement the Oldakowskis had with Barrett, he at some time expanded that agreement from its original scope. And some evidence suggests that

unloading the bales was, as the district court found, a personal favor to the Oldakowskis. For example, Scholl used the Oldakowskis' skid-steer loader to unload and stack the bales, and Scholl and the Oldakowskis discussed the manner of stacking. Scholl also had a longstanding personal relationship with the Oldakowskis and rented property from them.

Viewing the evidence in the light most favorable to appellants, we conclude that there is a genuine issue of material fact as to whether unloading and stacking the bales was or became a part of the hauling agreement between Barrett and the Oldakowskis. This fact question is affected by (1) the lack of payment for the unloading and stacking service; (2) Scholl's use of the Oldakowskis' skid-steer loader; (3) the involvement of the Oldakowskis in the unloading process; (4) the personal relationship between Scholl and the Oldakowskis; and (5) the parties' expectations at the outset of the hauling agreement. But the fact question also is affected by evidence that Scholl was regularly hired to perform hauling services for the Oldakowskis and had an interest in both his personal and professional relationship with them, all of which may suggest to a jury that the work was not a personal favor but rather an extension of the agreement to haul the bales. Because there is a genuine issue of material fact as to whether unloading and stacking the bales was included in the hauling agreement or was a personal favor by Scholl, we must reverse the district court's ruling that, as a matter of law, Barrett is not liable for Scholl's actions, and remand for trial.

## DECISION

Because there is a genuine issue of material fact as to whether Scholl unloaded bales as a part of the hauling agreement between Barrett and the Oldakowskis, or as a personal favor to the Oldakowskis, we reverse the district court's grant of summary judgment to Barrett and remand for trial.

**Reversed and remanded.**