United States Court of Appeals

For the Eighth Circuit

_____

No. 21-2495

_____

Jason Blais, individually and as Trustee for the Heirs and Next of Kin of Karen
Larson

*Plaintiff - Appellant*

v.

United States of America

*Defendant - Appellee*

Virginia Klemish

*Third Party Defendant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 15, 2022
Filed: June 16, 2022

_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

_____

BENTON, Circuit Judge.

On the way home, Paul L. Baron, a rural carrier for the United States Postal
Service, was involved in an automobile accident that killed another motorist. He

had already completed his delivery route and returned undeliverable mail to the post office. Jason Blais, the trustee for the motorist's heirs, sued under the Federal Tort Claims Act. The district court[1] found that Baron was not acting within the scope of employment at the time of the accident. It dismissed the FTCA claim for lack of subject matter jurisdiction. Blais appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

"We review de novo the grant of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." ***Hastings v. Wilson***, 516 F.3d 1055, 1058 (8th Cir. 2008).

"The FTCA waives federal sovereign immunity for injuries 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable.'" ***Newcombe v. United States***, 933 F.3d 915, 917 (8th Cir. 2019), *quoting* **28 U.S.C. § 1346(b)(1)**. "Under the FTCA, the law of the place of the alleged tort governs the scope-of-employment question." ***Brown v. Armstrong***, 949 F.2d 1007, 1012 n.7 (8th Cir. 1991), *citing* ***Williams v. United States***, 350 U.S. 857, 857 (1955).

The Minnesota Supreme Court addressed the issue here in *Gackstetter v. Dart Transit Company*, 130 N.W.2d 326 (Minn. 1964). An auto accident was allegedly caused by the driver of a tractor-truck. ***Gackstetter***, 130 N.W.2d at 327. The truck was owned by the driver but leased to Dart Transit Company. Before the accident, the driver visited Dart's terminal for instructions. ***Id.*** at 328. Dart directed him to pick up a trailer in South St. Paul the next morning and take it to Chicago. The driver left for home in the truck. The accident occurred on the way home. An injured motorist sued Dart, alleging the driver was within the scope of employment at the

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

time of the accident.  The trial court directed a verdict for Dart.  *Id.* at 327.  The Minnesota Supreme Court affirmed:

> [T]he evidence is insufficient to support a reasonable inference that [the driver's] trip home was a necessary incident of his employment or actuated by an intention to serve Dart.  He recorded on his log sheet that he was off duty.  His route could not reasonably be regarded otherwise than as incidental to his personal desires and thus unrelated to Dart's business.

*Id.* at 329 (alterations added).

Similarly, in *Acceptance Insurance Co. v. Canter*, 927 F.2d 1026, 1027 (8th Cir. 1991), another truck driver visited his company's terminal to pick up a load.  No load was available; he left.  On the way home, the driver allegedly caused an accident.  This court held that the driver was not within the scope of employment under Minnesota law.

> Based on these facts and the Supreme Court of Minnesota's ruling in *Gackstetter,* we find that [the driver] Caldwell was not "in the business of" Britton [the transportation company] when the accident occurred.  When Caldwell left Britton's St. Paul terminal, he did not depart with any instructions to proceed to a particular destination.  Rather, he was driving home for the weekend and was instructed to call Britton on Monday to see whether work was available.  Thus, when Caldwell left Britton's terminal he was off-duty and free to spend the weekend as he wished.

*Canter*, 927 F.2d at 1028 (alterations added).

*Gackstetter* and *Canter* control here.  Like the drivers there, Baron was on the way home at the time of the accident.  Like the driver in *Gackstetter*, USPS records reflect that Baron had completed his duties and "recorded on his log sheet that he was off duty." *See Gackstetter*, 130 N.W.2d at 329.  Like the driver in *Canter*, Baron had no directions to "proceed to a particular destination" and was "off-duty and free

to spend the [evening] as he wished." *See Canter*, 927 F.2d at 1028 (alteration added). In other words, Baron was not furthering the interests of the USPS. *See Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 15 (Minn. 1979) ("To support a finding that an employee's negligent act occurred within his scope of employment, it must be shown that his conduct was, to some degree, in furtherance of the interests of his employer.").

Blais believes that *Gackstetter* is distinguishable, asserting: (1) the tractor-truck there was supposed to stay at the terminal when not hauling trailers for the employer, while Baron was not required to leave his vehicle at the post office when not delivering mail; (2) "the USPS required that [Baron] follow a specific route when traveling from home to work and from work back to home . . . . [a]fter he had completed service of his route and returned to the post office, he was required to drive directly home, without deviation"; and (3) Baron was required to drive a personal vehicle while performing his duties as a carrier.

These assertions are unfounded. First, the driver in *Gackstetter* was *not* required to leave the tractor-truck at the terminal:

> Although Mr. Oren, the president of Dart, testified at one point in the trial that [the driver] Merrell was definitely instructed that the tractor should remain in St. Paul at the terminal when he was not engaged in hauling trailers, no objection was made to this use of the tractor. Since Merrell testified he made such use of the tractor on other occasions with Dart's knowledge, we must conclude that Dart's failure to object implied consent.

*Gackstetter*, 130 N.W.2d at 328 (alteration added).

Second, the USPS does not require rural carriers to return directly home after completing their delivery routes. True, a USPS handbook states about the Federal Employees' Compensation Act: "Rural letter carriers are considered to be in the performance of duty for purposes of FECA when driving their own vehicle between

-4-

their home and the Post Office, and between the Post Office and their home, provided Postal Service records indicate that the Postal Service required the carrier to furnish the vehicle." **USPS Handbook PO-603, § 171.51** *Federal Employees' Compensation Act (FECA)* (2013). But FECA coverage does not control FTCA liability. *See **Frankle v. Twedt***, 47 N.W.2d 482, 488 n.4 (Minn. 1951) ("The phrase 'scope of employment,' as used in the field of torts to circumscribe the area of vicarious liability to third persons, is to be sharply differentiated from the workmen's compensation act phrase 'arising out of and in the course of employment.' Compensation acts are Sui generis and belong to a fundamentally different field of litigation." (citation omitted)); ***Laurie v. Mueller***, 78 N.W.2d 434, 438 (Minn. 1956) ("[T]he 'scope of employment' concept in vicarious tort liability rests upon an entirely different rationale than the 'arising out of and in the course of employment' standard of workmen's compensation."). The fact that Baron may be covered by FECA if he went directly home from the post office does not mean he was required to do so.

Third, Blais stresses that Baron drove his own vehicle to and from the post office. But the tractor-truck in *Gackstetter* was also owned by the driver. *Gackstetter*, 130 N.W.2d at 327 ("At the time of the accident the tractor was owned by defendant Merrell . . . ."). While Blais cites cases imposing or contemplating vicarious liability where employees cause accidents while driving personal vehicles, those cases did not find that employees were acting within the scope of employment *because* they were driving their own vehicles. Rather, they observe that an employer is not relieved of liability because the employee was driving his or her own car. *See **Boland v. Morrill***, 132 N.W.2d 711, 718 (Minn. 1965) ("In both of those cases the employee was operating his employer's car, which presented a prima facie case that he was acting within the scope of his employment, but the mere fact that a salesman operated his own car, except for the variance in the burden of proof, would not prevent a finding that he was operating within the scope of his employment."); ***Nelson v. Nelson***, 166 N.W.2d 70, 73 (Minn. 1969) ("It is unnecessary to again review the authorities which are gathered and discussed in [*Boland*] beyond saying that the employer is not relieved from liability for the employee's negligence merely

because the employee is using his own vehicle at the time of the accident." (alteration added)).

Blais claims his case is more like *Boland* and *Nelson* than *Gackstetter* and *Canter*. In *Boland*, a jury found that a traveling salesmen caused an auto accident within the scope of employment. ***Boland***, 132 N.W.2d at 717. At the time of the accident, the salesman was on his way to a farm where he kept trailers to transport the products he sold. Because the salesman "was not on a personal visit but intended to ascertain whether the trailers were in shape so that they could be used if necessary," the Minnesota Supreme Court upheld the verdict. ***Id.*** In *Nelson*, a company was sued after a salesman caused an auto accident. ***Nelson***, 166 N.W.2d at 72. The trial court directed a verdict for the plaintiff. But, because the accident occurred while the salesman was "intend[ing] to serve the dual purpose of taking his wife part way to the doctor's office and [visiting] his customer's place of business," the Minnesota Supreme Court reversed. ***Id.*** at 74 (alterations added). *See also* ***Frankle***, 47 N.W.2d at 488 ("Schmit was clearly acting within the scope of his employment, although when the collision occurred he was transporting his fiancee and his buddy for the purpose of taking them to their homes after he had called for plaintiff . . . . An act may be within the scope of employment, although done in part to serve the purposes of the servant or of a third party.").

Unlike the drivers in *Boland* and *Nelson*, Baron did not intend to "serve his master" at his destination. *See* ***Boland***, 132 N.W.2d at 717; ***Nelson***, 166 N.W.2d at 74. *See also* ***Bauer v. Markovich***, 484 N.W.2d 437, 439 (Minn. App. 1992) (employee was not acting within scope of employment because his conduct was not "brought about . . . by the desire to serve the employer"). Instead, Baron had concluded his USPS tasks and was on his way home, like the drivers in *Gackstetter* and *Canter*. Those cases foreclose Blais's FTCA claim.

Because Baron was not within the scope of employment at the time of the accident, the FTCA does not waive federal sovereign immunity. The district court properly dismissed for lack of subject matter jurisdiction.

* * * * * * *

The judgment is affirmed.

_____